# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| **SCOTT OXFORD, CHRISTOPHER COLEMAN, JONATHAN GUY, and TIFFANY GOTSIS individually and on behalf of all persons similarly situated,** | Civil Action No. 4:17-CV-178 |
| | Complaint — Class & Collective Action |
| **Plaintiffs,** | Jury Trial Demanded |
| v. | |
| **BROADBAND INSTALLATIONS OF IOWA, LLC, and MEDIACOM COMMUNICATIONS CORP.,** | |
| **Defendants.** | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Scott Oxford, Christopher Coleman, Jonathan Guy, and Tiffany Gotsis (collectively, "Plaintiffs"), through their undersigned counsel, individually and on behalf of all persons similarly situated, file this Class and Collective Action Complaint against Defendants Broadband Installations of Iowa, LLC ("Broadband") and Mediacom Communications, Corp. ("Mediacom") (collectively, "Defendants"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA"), and Iowa state laws. Plaintiffs allege that although Defendants classified them and other similarly situated technicians as independent contractors, they were in fact Defendants' employees under the FLSA and Iowa state wage laws, were not paid for all hours worked, nor paid minimum wage or overtime, and that Defendants made deductions from their compensation that were not for their benefit. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

1. Jurisdiction over Plaintiffs' FLSA claims are proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims derive from a common nucleus of operative facts.

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to Plaintiffs' claims occurred within this judicial district, Defendants maintain physical locations within this judicial district and Defendant Broadband is incorporated in this State.

## PARTIES

4. Plaintiff Scott Oxford is an individual residing in Monroe, Iowa. Between approximately 2010 to March 2017, Plaintiff Oxford worked as a cable installation technician for the Defendants in the State of Iowa. Pursuant to 29 U.S.C. § 216(b), Oxford has consented in writing to being a Plaintiff in this action. *See* Exhibit A.

5. While he worked for Defendants, Plaintiff Oxford operated primarily out Ankeny, Iowa, but also worked for Defendants in Georgia. During his work for Defendants, Plaintiff Oxford regularly worked a minimum of five days per week, 12 hours per day, and did not receive overtime compensation at any time during the class period.

6. Plaintiff Christopher Coleman is an individual residing in Indianola, Iowa. Between approximately July 2013 and January 2017, Plaintiff Coleman worked for Defendants as a cable installation Technician. Pursuant to 29 U.S.C. § 216(b), Plaintiff Coleman has consented in writing to being a Plaintiff in this action. *See* Exhibit B.

7. While he worked for Defendants, Plaintiff Coleman operated primarily out of

Ankeny, Iowa.  During his work for Defendants, Plaintiff Coleman regularly worked an average of five days per week, about 10 hours per day, and did not receive overtime compensation at any time during the class period.

8. Plaintiff Jonathan Guy is an individual residing in Des Moines, Iowa.  Between approximately March 2014 and March 2017, Plaintiff Guy worked for Defendants as a cable installation Technician.

9. While working for Defendants, Plaintiff Guy operated primarily out of Ankeny, Iowa, but also worked out of Mediacom's office in Ottumwa, Iowa for four or five months.  During his work for Defendants, Plaintiff Guy regularly worked an average of five days per week, about 12 hours per day, and did not receive overtime compensation at any time during the class period.

10. Plaintiff Tiffany Gotsis is an individual residing in Williamsburg, Iowa.  Between approximately April 2014 and October 2015, Plaintiff Gotsis worked as a cable installation technician for Defendants in the State of Iowa.   Pursuant to 29 U.S.C. § 216(b), Plaintiff Gotsis has consented in writing to being a Plaintiff in this action.  *See* Exhibit C.

11. While she worked for Defendants, Plaintiff Gotsis operated primarily out Cedar Rapids, Iowa.  During her work for Defendants, Plaintiff Gotsis regularly worked a minimum of six days per week, 12 hours per day, and did not receive overtime compensation at any time during the class period.

12. Defendant Broadband Installations of Iowa, LLC is an Iowa company with its principal place of business located in Carroll, Iowa. Broadband is in the business of providing and managing cable installers who install and repair cable TV, internet and phone service to customers of defendant Mediacom.  Broadband hires cable installation Technicians throughout the United States, but intentionally misclassifies these Technicians as independent contractors, even though

they are in fact employees.

13. Defendant Mediacom Communications Corp. is a Delaware corporation that regularly performs business in Iowa and throughout the United States. Mediacom's principal place of business is in Mediacom Park, New York. Mediacom is in the business of providing, installing and repairing cable TV, internet and phone service for residential and business customers throughout the Midwest and Southeast United States.

## CLASS DEFINITIONS

14. Plaintiffs bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the following opt-in litigants:

> All Technicians who were classified as independent contractors while performing installation work for Broadband Installations of Iowa, Inc. and Mediacom in the United States from May 19, 2014 to the present (the "FLSA Class").

15. Plaintiffs bring Counts II and III of this lawsuit as a class action pursuant to FED. R. CIV. P. 23, on behalf of themselves and the following class:

> All Technicians who were classified as independent contractors while performing installation work for Broadband Installations of Iowa, Inc. and Mediacom in Iowa from May 19, 2015 to the present (the "Iowa Class").

16. The FLSA Class and Iowa Class are together referred to as the "Classes."

17. Plaintiffs reserve the right to redefine the Classes prior to filing a motion for notice to similarly situated employees pursuant to 29 U.S.C. § 216(b), prior to filing a motion for class certification pursuant to FED. R. CIV. P. 23, and thereafter, as necessary.

## FACTS

18. Mediacom provides its customers with cable television, internet, and telephone services. According to Mediacom's SEC Filings, its primary markets are in Iowa, Missouri, and Georgia.

19. Mediacom contracts with Broadband, to perform installations and troubleshoot for its customers in Iowa, North Carolina, Georgia, and Florida. At the same time, Mediacom retains its own staff of employee cable, internet, and telephone installers.

20. Broadband utilizes Technicians, such as Plaintiffs, to install and troubleshoot Mediacom cable communications products throughout the United States, including in Iowa, Delaware, North Carolina, Georgia, and Florida.

21. Between approximately 2010 and March 2017, Plaintiff Oxford worked as a cable Technician for Defendants out of Ankeny and Cedar Rapids, Iowa. He worked in Iowa and Georgia.

22. Between approximately July 2013 and January 2017, Plaintiff Coleman worked as a cable Technician for Defendants out of Ankeny, Iowa.

23. Between approximately March 2014 and March 2017, Plaintiff Guy worked as a cable Technician for Defendants out of Ankeny, Iowa.

24. Between approximately April 2014 and October 2015, Plaintiff Gotsis worked as a cable Technician for Defendants out of Cedar Rapids, Iowa.

25. The Department of Labor's Wage and Hour Division ("WHD") released Administrator's Interpretation No. 2015-1, to provide "guidance regarding the application of the standards for determining who is an employee under the Fair Labor Standards Act [FLSA] . . . to the regulated community in classifying workers and ultimately in curtailing misclassification." U.S. Dep't of Labor, Wage & Hour Div., Admin.'s Interpretation No. 2015-1, 1 (July 15, 2015). According to the WHD, "most workers are employees under the FLSA's broad definitions." *Id*.

26. Defendants improperly misclassified Plaintiffs and Class Members as independent contractors, when the economic reality of their work is that of an employee, and Defendants

5

retained the right of control, and, in fact, actually did control the work of Plaintiffs. Plaintiffs and Class Members qualify as employees of both Broadband and Mediacom under the FLSA and Iowa law, as further described below.

**BROADBAND EMPLOYS PLAINTIFFS AND CLASS MEMBERS**

27. The work performed by Plaintiffs and Class Members is an integral part of Broadband's business.

28. Broadband instructs Plaintiffs and Class Members concerning how to do their work and dictates the details of the performance of their jobs. For example:

   a. Broadband requires Plaintiffs and Class Members to perform their work in accordance with Broadband's policies, manuals, standard operating procedures and Mediacom's requirements;

   b. Plaintiffs and Class Members were required to report to a Broadband facility each day by 7:30 a.m. where Broadband would assign the Technicians their complete routes for the day;

   c. Broadband requires Plaintiffs and Class Members to wear a uniform with a logo stating "Broadband Installations – Interne, Video, Telephone – Contractor for Mediacom." The uniform included shirts and hats.

   d. Broadband requires Plaintiffs and Class Members to display Broadband magnetic logos on their vehicles at all times;

   e. Broadband, not Plaintiffs or Class Members, conducts all of the billing and invoicing directly to Mediacom for the Technicians' work;

   f. Plaintiffs and Class Members have no control over what prices to charge. All negotiations over the cost of the work are determined between Broadband and

      Mediacom;

  g. Broadband requires Plaintiffs and Class Members to complete training lasting as long as three weeks that is conducted by Broadband;

  h. Plaintiffs and Class Members are not permitted to provide Defendants' customers with any additional products without the authorization of Defendants;

  i. Broadband performs in-field inspections of Plaintiffs' and Class Members' work;

  j. Broadband requires Plaintiffs and Class Members to be monetarily liable for any missing inventory, security tool or equipment; and

  k. Defendants, not Plaintiffs or Class Members, may change the terms of the working arrangement without notice at any time.

29. Upon information and belief, at all relevant times, Mediacom was the only client of Broadband and was the sole source of Broadband's income.

30. As a result, Broadband's earnings are significantly driven by the number of Technicians performing installation services for Broadband's Mediacom customers and the fees that Broadband charges Mediacom for these services.

31. Broadband is in the business of providing Mediacom cable installation and services. Plaintiffs and Class Members installed and provided technical services to Broadband's residential and commercial customers.

32. Broadband requires Plaintiffs and Class Members to undergo a training period of approximately one to three weeks to perform Mediacom installations.

33. Broadband failed to pay the minimum wage to Technicians during their training

7

periods. Such periods could last as long as three weeks, 40 to 50 hours per week, and regardless of the number of hours or weeks, Broadband paid the Technicians a flat fee of approximately $600.

34. In addition to reserving the right to control the work performed by Plaintiffs and Class Members, in their contracts, Broadband, in fact, does exercise control over the method and manner in which Plaintiffs and Class Members perform their labor for Defendants' clients.

35. Broadband requires Plaintiffs and Class Members to submit to a consumer background report as part of the application process.

36. Broadband requires Plaintiffs and Class Members to report the end of each installation throughout the day.

37. Broadband requires Plaintiffs and Class Members to attend mandatory weekly meetings to discuss their performance.

38. Broadband tracks Plaintiffs' and Class Members' performance through customer surveys generated and maintained by Mediacom.

## MEDIACOM JOINTLY EMPLOYED PLAINTFFS AND CLASS MEMBERS

39. The WHD released Administrator's Interpretation No. 2016-1, affirming that the "expansive definition of 'employ' as including 'to suffer or permit to work' … ensures that the scope of employment relationships and joint employment under the FLSA … is as broad as possible." U.S. Dep't of Labor, Wage & Hour Div., Admin.'s Interpretation No. 2016-1, 1 (Jan. 20, 2016).

40. Mediacom exerts significant control over Broadband, as well as its Technicians, regarding the essential terms and conditions of the employment of Plaintiffs and Class Members.

41. Mediacom has the power to and does terminate the Technicians employed by Broadband.

42. Broadband managers are frequently told that they must terminate a Technician for the sole reason that it has been requested by Mediacom.

43. Upon information and belief, Plaintiffs Oxford, Coleman, and Guy were terminated by Broadband pursuant to a request made by a Mediacom manager.

44. Mediacom exercises supervision and control over Plaintiffs and the Class Members' work schedules.

45. Mediacom generates the work schedule for each Technician, including their assignments and the order those assignments must be completed.

46. Mediacom requires Technicians to adhere to 30-minute arrival windows and requires that Technicians be available for evening and weekend installations.

47. Plaintiffs and Class Members are required to use Mediacom's dispatch system and are in frequent contact with Mediacom personnel throughout the workday.

48. Additionally, Broadband managers were required to be in contact with Mediacom on a daily basis regarding the performance of the Technicians.

49. Mediacom performed daily quality control checks of Broadband and the installations performed by Plaintiffs and Class Members. If the quality control checks identified any issues, the Technicians would be charged and would be required to fix any problems without compensation.

50. Mediacom maintained customer survey ratings of the Technicians' performance.

**PLAINTIFFS AND CLASS MEMBERS ARE DEFENDANTS' EMPLOYEES AS A MATTER OF ECONOMIC REALITY**

51. Plaintiffs and Class Members perform core work that is necessary to Broadband's businesses, which is providing installation and repair services for residential and commercial customers of Mediacom.

9

52. Plaintiffs and Class Members perform core work that is necessary to Mediacom's business, which is providing the installation and repair services that Mediacom promises to its customers and which Mediacom controls through its own managers, administrative staff, dispatchers, and quality control inspectors.

53. Plaintiffs and Class Members are not in business for themselves and have no meaningful opportunity for profit or loss. They are assigned all of their work by Defendants and are paid a flat rate which is dictated to them by Defendants. Moreover, to work for Broadband, Plaintiffs and Class Members are required to agree to not to perform similar services for Broadband's customers within a year of being terminated by Broadband and Plaintiffs and Class Members cannot assign their rights under the independent contractor agreement.

54. Plaintiffs and Class Members investment in tools and insurance they are required by Defendants to purchase is minor relative to the Defendants' investment in the equipment and infrastructure necessary to provide cable television, internet, and phone services to Mediacom customers.

55. Cable installation requires no special skill as it can be learned during a training period that lasts no longer than a few weeks. Moreover, Plaintiffs and Class Members are not required to exercise business skills, judgment, or initiative, as all of their work is provided by Defendants and they are paid at rates determined solely by Defendants.

56. Plaintiffs work more or less on a full-time, permanent basis for Defendants. In fact, Plaintiffs worked for Defendants from approximately 18 months up to seven years, working five to seven days a week on a full-time basis. Class Members similarly worked exclusively for Defendants on a full-time basis.

57. As described above, Defendants exercise extensive and nearly complete control

over every aspect of Plaintiffs and Class Members work.

58. By virtue of the extensive control Defendants exert over them, and the nature of their relationship with Defendants, the Technicians are not independent business operators, or agents of independent business operators, as Defendants have classified them, but rather, all Technicians that perform work on behalf of Defendants are employees of Defendants under the FLSA and Iowa state law.

59. Defendants have intentionally misclassified Plaintiffs and the Classes to avoid Defendants' obligations under the FLSA and state wage laws. Defendants save thousands of dollars in avoiding expenses associated with its core business by not providing Plaintiffs and the Classes with proper minimum wage, health, pension, or other benefits ordinary employees are entitled to and enjoy.

**DEFENDANTS SUBJECT PLAINTIFFS TO AN UNLAWFUL PAYMENT SCHEME**

60. Plaintiffs and Class Members are paid a flat rate on a per job basis with a rate schedule determined by Defendants at the time of the service.

61. Defendants' pay policies for Plaintiffs and Class Members include charge backs. Defendants make frequent chargebacks for equipment and damage claims made by customers, and deduct it from the Technicians' paychecks.

62. Additionally, Defendants deduct a chargeback if any further work was required within 30 days of an installation performed by the Technician.

63. Defendants also made deductions from Plaintiffs and Class Members compensation for a bond to cover for the balance of any chargebacks at the time of the Technician's termination.

64. Broadband's Technicians are required to purchase tools, equipment, and insurance. These required purchases are primarily for the benefit of Defendants' business and can cost

11

Technicians hundreds and in some cases over one thousand dollars.

65. Plaintiffs worked on average between five (5) to seven (7) days per week, ten (10) to twelve (12) hours per day. Plaintiffs observed that Class Members routinely work the same schedule.

66. Plaintiffs and Class Members routinely work in excess of forty (40) hours per week each week.

67. Defendants, pursuant to their policies and practices, failed and refused to pay overtime compensation for all hours worked over forty (40) in a workweek to Plaintiffs and Class Members.

68. Plaintiffs and Class Members do not receive minimum wage during their training periods.

69. Defendants have shifted certain capital costs to Plaintiffs and the Class while retaining behavioral and financial control over them in the same way it would over any of its employees.

70. Furthermore, Plaintiffs and Class Members often fail to receive minimum wage for all hours work due to: 1) deductions taken from their pay; 2) being required to perform repair work without compensation; and 3) being required to pay for equipment and insurance that are for the benefit of Defendants.

71. Defendants have intentionally misclassified Plaintiffs and Class Members to avoid Defendants' obligations under the FLSA and state wage laws. Defendants save thousands of dollars in avoiding payroll withholdings and other expenses associated with its core business by not providing Plaintiffs and the Classes with proper minimum wage, health, pension, or other benefits ordinary employees are entitled to and enjoy.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

72. Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Class as defined above.

73. Plaintiffs desire to pursue their FLSA claim on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

74. Plaintiffs and the FLSA Class are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or worked pursuant to Defendants' previously described common business and compensation practices as described herein, and, as a result of such practices, have been misclassified as independent contractors and have not been paid the full and legally mandated minimum for all hours worked. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common misclassification, compensation and payroll practices.

75. Specifically, Defendants misclassified Plaintiffs and the FLSA Class as independent contractors and paid them a piece rate and no overtime.

76. The similarly situated employees are known to Defendants, are readily identifiable, and can easily be located through Defendants' business and human resources records.

77. Defendants employ many FLSA Class Members throughout the United States. These similarly situated employees may be readily notified of this action through U.S. mail and/or other means, and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

78. Plaintiffs bring this action as a class action pursuant to FED. R. CIV. P. 23 on behalf

of themselves and the Iowa Class defined above.

79. The members of the Iowa Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Iowa Class.

80. Plaintiffs will fairly and adequately represent and protect the interests of the Iowa Class because there is no conflict between the claims of Plaintiffs and those of the Iowa Class, and Plaintiffs' claims are typical of the claims of the Iowa Class. Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

81. There are questions of law and fact common to the proposed Iowa Class, which predominate over any questions affecting only individual Class members, including, without limitation: whether Iowa has violated and continues to violate common law through its policy or practice of not paying its Technicians for all hours worked and overtime compensation.

82. Plaintiffs' claims are typical of the claims of the Iowa Class in the following ways, without limitation: (a) Plaintiffs are members of the Iowa Class; (b) Plaintiffs' claims are of the same policies, practices and course of conduct that form the basis of the claims of the Iowa Class; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the Iowa Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and the Iowa Class Members; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the Iowa Class members.

83. Class certification is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the Iowa Class predominate over any questions affecting only individual Class Members.

84. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Iowa Class is readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the Iowa Class would create the risk of inconsistent or varying adjudications with respect to individual Iowa Class members that would establish incompatible standards of conduct for Defendants.

85. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Iowa Class members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

86. Without a class action, Defendants will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the Iowa Class. Plaintiffs envision no difficulty in the management of this action as a class action.

## COUNT I
### Violation of the FLSA Minimum Wage and Overtime Provisions
### (On Behalf of Plaintiffs and the FLSA Class)

87. All previous paragraphs are incorporated as though fully set forth herein.

88. The FLSA requires that covered employees be compensated overtime pay for all hours worked over forty (40) hours at no less than one and a half (1 ½) times their regular rate of pay. *See* 29 U.S.C. § 207.

89. Additionally, the FLSA requires employers must provide workers' weekly wages "in cash or in facilities", "free and clear" of improper deductions, at a rate no lower than the minimum wage rate ($7.25 since July 24, 2009. *See* 29 U.S.C. § 206(a)(1).

90. The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. 203(e)(1), and "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. 203(d). The FLSA's definition of "employ" broadly covers anyone who is "suffer[ed] or permit[ed] to work." 29 U.S.C. 203(g).

91. Defendant Broadband is subject to the wage requirements of the FLSA because it is an "employer" under 29 U.S.C. §§ 203(d) and (s) because it has annual gross sales or business of at least $500,000 and has employees engaged in interstate commerce.

92. Defendant Mediacom is subject to the wage requirements of the FLSA because it is an "employer" under 29 U.S.C. §§ 203(d) and (s), because it has annual gross sales or business of at least $500,000 and has employees engaged in interstate commerce.

93. At all relevant times, Plaintiffs and the FLSA Class are covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

94. Plaintiffs and the FLSA Class are entitled to be paid overtime for hours worked over forty (40) in a workweek, pursuant to 29 U.S.C. § 207.

95. Plaintiffs and the FLSA class are entitled to be paid minimum wage for all hours worked "free and clear" of deductions pursuant to 29 U.S.C. § 206.

96. Defendants do not maintain accurate records of all hours that Plaintiff and the FLSA Class worked each workday and the total number of hours worked each workweek as required by the FLSA. *See* 29 C.F.R. § 516.2(a)(7).

97. Defendants, pursuant to their policies and practices, knowingly failed to pay

16

Plaintiffs and the FLSA Class overtime compensation for all hours worked over forty (40) in a workweek in violation of 29 U.S.C. § 207.

98. Plaintiffs and the FLSA class did not receive the minimum wage for their training periods.

99. Plaintiffs and the FLSA class did not receive minimum wage in weeks where they incurred substantial deductions from their pay.

100. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

101. Pursuant to 29 U.S.C. § 216(b), employers such as Defendants, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT II
### Violation of the Iowa Wage Payment Collection Law
### (On Behalf of Plaintiffs and the Iowa Class)

102. All previous paragraphs are incorporated as though fully set forth herein.

103. Iowa's Wage Payment Collection Law ("WPCL") requires an employer to pay all wages due to its employees. *See* Iowa Code § 91A.5.

104. Defendant Broadband is subject to the wage requirements of the WPCL because Broadband is an "employer" under Iowa Code § 91A.2.

105. Defendant Mediacom is subject to the wage requirements of the WPCL because Mediacom is an "employer" under Iowa Code § 91A.2.

106. At all relevant times, Plaintiffs and the Iowa Class are covered employees entitled to the above-described WPCL protections. *See* IOWA CODE § 91A.2.

107. Plaintiffs and the Iowa Class are not exempt from the requirements of the WPCL for wage payments.

108. Defendants, pursuant to their policies and practices, made unauthorized deductions from Plaintiffs and the Iowa Class Members compensation in violation of the WPCL. Iowa Code § 91A.5.

109. Pursuant to Iowa Code § 91A.8, an employer, such as Defendants, who fails to pay an employee wages in conformance with the WPCL shall be liable to the employee for the wages or expenses that were not paid, interest, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

110. In violating Iowa law, Defendants acted willfully and with reckless disregard of clearly applicable WPCL provisions.

## COUNT III
### Unjust Enrichment Under Iowa Law
### (On Behalf of Plaintiffs and the Iowa Class)

111. All previous paragraphs are incorporated as though fully set forth herein.

112. Defendants received and benefited from the uncompensated labors of Plaintiffs and the Iowa Class, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

113. At all relevant times hereto, Defendants devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from Plaintiffs and the Iowa Class without paying wages for all hours worked, by making unauthorized deductions from Plaintiffs' pay, and by requiring Plaintiffs to pay for Defendants' own business expenses.

114. By reason of having secured the work and efforts of Plaintiffs and the Iowa Class without paying wages for all hours worked as required by law, Defendants enjoyed reduced

overhead with respect to their labor costs, and therefore realized additional earnings and profits to its own benefit and to the detriment of Plaintiffs and the Iowa Class.

115. Furthermore, Defendant Broadband intentionally charges Plaintiffs and the Iowa Class more than the value of lost or damaged equipment, thereby profiting from the policy of misclassifying the Technicians as independent contractors and making deductions from their pay.

116. Accordingly, it would be inequitable for Defendants to retain the benefit of Plaintiffs' and the Iowa Class' services without paying them wages for all hours worked as required by law.

117. Plaintiffs and the Iowa Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants.

## JURY DEMAND

Plaintiffs request a trial by jury on all of their claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

    a. A declaration that Defendants misclassified Plaintiffs and Class Members as independent contractors instead of employees;

    b. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

    c. An order permitting this litigation to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Iowa Class;

    d. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the FLSA Class;

    e. Injunctive relief requiring Defendants to comply with all applicable federal and state laws and cease their illegal practices;

    f. A judgment in favor of Plaintiffs and Class Members for all penalties and liquidated

    damages allowed by law;

g. An award of pre-judgment and post-judgment interest to Plaintiffs and Class Members;

h. An award of attorney's fees and costs as provided by law; and

i. Any other relief to which the Plaintiffs and Class Members may be entitled.

Dated: May 19, 2017                             Respectfully submitted,

SCOTT OXFORD, CHRISTOPHER COLEMAN, JONATHAN GUY, and TIFFANY GOTSIS, individually and on behalf of all persons similarly situated,

By their attorneys,

_/s/ Nate Willems_
Nate Willems
RUSH & NICHOLSON, P.L.C.
P.O. Box 637
Cedar Rapids, IA 52406
319-363-5209
Fax: 319-363-6664
nate@rushnicholson.com

Harold Lichten (Mass. BBO # 549689)*
Benjamin J. Weber (Mass. BBO # 673736)*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
hlichten@llrlaw.com
bweber@llrlaw.com

*Attorneys for Plaintiffs*
*and the Proposed Classes*
*\*Application for Admission to be Filed*