IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| SCOTT OXFORD, CHRISTOPHER COLEMAN, JONATHAN GUY, and TIFFANY GOTSIS, individually and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROADBAND INSTALLATIONS OF IOWA, LLC, and MEDIACOM COMMUNICATIONS CORP.,<br><br>Defendants. | ) | Case No. 4:17-CV-00178-SMR-RAW<br><br>ORDER ON MOTION TO DISMISS AND MOTION FOR CONDITIONAL CLASS CERTIFICATION |

Plaintiffs are former cable installation technicians who allege Defendants Broadband Installations of Iowa, LLC ("Broadband") and Mediacom Communications Corp. ("Mediacom") wrongfully classified them as independent contractors rather than employees to avoid wage requirements established by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and Iowa law. Mediacom filed a motion for partial dismissal, in which Broadband joined. Plaintiffs subsequently moved to conditionally certify the class under 29 U.S.C. § 216(b). The Court held a hearing on the motions on October 26, 2017.

As explained below, the Court GRANTS Defendants' motion with respect to Plaintiffs' FLSA claims for minimum wages against Mediacom, DENIES Defendants' motion with respect to Plaintiffs' claims for unjust enrichment, and further GRANTS Plaintiffs leave to amend. The Court also GRANTS Plaintiffs' motion for conditional certification.

## I. BACKGROUND

The facts come from the Complaint and are assumed true for purposes of the motion to dismiss. Plaintiffs are four cable installation technicians who worked for Defendants in Iowa and Georgia. Plaintiffs seek to represent a class of technicians who were classified as independent contractors when performing installation work for Broadband and Mediacom.

Mediacom provides cable television, internet, and telephone services to its customers; its primary markets are Iowa, Missouri, and Georgia. To service these products, Mediacom maintains its own staff of employee–technicians. Mediacom also contracts with Broadband, which utilizes technicians like Plaintiffs to install and troubleshoot Mediacom products. Mediacom is Broadband's only client—Broadband only services and installs Mediacom products.

Plaintiffs allege Broadband dictates how technicians' work should be performed. For instance, Broadband requires technicians to perform their work in accordance with Broadband policies and procedures, as well as Mediacom requirements. Technicians must submit to a consumer background report when applying to Broadband. Once hired, technicians must report to a Broadband facility at 7:30 a.m. every morning to receive their assigned routes. Technicians also must wear a uniform, including shirts and hats, with a logo that reads "Broadband Installations—Interne[t], Video, Telephone—Contractor for Mediacom." [ECF No. 1 ¶ 28]. Broadband requires technicians to display Broadband magnetic logos on their vehicles. Technicians do not set prices; Broadband and Mediacom negotiate the cost of work. Technicians do not bill for their own work—Broadband bills and invoices Mediacom directly for work performed by technicians. Technicians cannot provide additional products to customers without authorization from Defendants. Broadband conducts field inspections of technicians' work. Broadband holds technicians monetarily liable for any missing equipment or inventory. Broadband and Mediacom may change

the terms of work at any time without notice. Technicians must report the end of each of their installations during the day. Broadband requires technicians to attend weekly meetings to discuss their performance, and their performance is monitored by Broadband through customer surveys created and maintained by Mediacom.

Broadband requires technicians to complete training—which Broadband conducts—that can last up to three weeks. During the training period, Broadband does not pay minimum wages. The training period can last approximately one to three weeks, forty to fifty hours per week. Irrespective of the number of hours or weeks, Broadband pays technicians a flat fee of approximately $600 for the training period.

Plaintiffs allege Mediacom functioned as their joint employer, with Broadband, through its control over Broadband and its technicians. Mediacom allegedly has the power to terminate Broadband technicians. Broadband mangers have been told that they must terminate a technician solely because Mediacom has requested it. Plaintiffs Oxford, Coleman, and Guy allege they were terminated by Broadband pursuant to requests made by Mediacom managers. Additionally, Mediacom generates work schedules for all technicians, including their assignments and the order in which those assignments must be completed. Pursuant to Mediacom's requirements, technicians must arrive at assignments within a thirty-minute window and they must make themselves available for evening and weekend installations. Technicians must use Mediacom's dispatch system and they stay in frequent contact with Mediacom personnel throughout the workday. Mediacom performs quality control checks of Broadband and technician installations on a daily basis. If a control check reveals any issues, the technician is charged and required to fix resulting problems without pay. Mediacom keeps customer survey ratings of technicians' performance.

In addition, Plaintiffs state the nature of their work for Defendants shows technicians function as employees, rather than independent contractors. Technicians have no meaningful opportunity for profit or loss. Defendants assign technicians all of their work and they receive a flat rate of pay determined by Defendants. Before they can begin working for Broadband, technicians must agree not to perform similar services for Broadband's customers within a year of termination. Cable installation work does not require specials skills, and technicians do not exercise any business skills, judgment, or initiative, since all of their work is provided by Defendants. Technicians work more or less on a full-time, permanent basis for Defendants. Plaintiffs worked for Defendants full-time, five to seven days a week, for between eighteen months and seven years.

Plaintiffs allege Defendants' payment system for technicians is unlawful. Defendants pay technicians a flat rate per job under a rate schedule determined by Defendants. Defendants make chargebacks for equipment and customer damage claims; the chargebacks are deducted from technicians' pay. Defendants also deduct compensation for a bond from technicians' pay. Technicians must purchase tools, equipment, and insurance, which can cost hundreds, and occasionally over one thousand dollars. As previously noted, technicians work on a full-time permanent basis for Defendants. Technicians routinely work more than forty hours per week and they do not receive overtime compensation.

Plaintiffs allege Defendants intentionally misclassified them to avoid requirements under the FLSA and Iowa wage laws. Plaintiffs' Complaint alleges three counts: (1) violation of FLSA minimum wage and overtime provisions; (2) on behalf of Plaintiffs and members of an Iowa subclass, violation of the Iowa Wage Payment Collection Law; and (3) also on behalf of Plaintiffs and members of an Iowa subclass, unjust enrichment under Iowa law. After the filing of the

Complaint, Mediacom moved for partial dismissal, [ECF No. 27], and Broadband joined in that motion, [ECF No. 28]. Plaintiffs then moved for conditional certification under the FLSA. [ECF No. 31].

## II. MOTION TO DISMISS

### *A. Legal Standard*

Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard, and thus survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The facts alleged in the complaint 'must be enough to raise a right to relief above the speculative level.'" *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)). All reasonable inferences must be drawn in the plaintiffs' favor. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).

*B. Analysis*

Defendants move for partial dismissal of several of Plaintiffs' claims.[1] First, Mediacom argues Plaintiffs' claims for minimum wages under the FLSA against Mediacom must be dismissed because Plaintiffs failed to plead that Mediacom employed them or failed to pay them during the alleged training periods.[2] Second, Defendants contend that Plaintiffs' unjust enrichment claims are barred by their statutory claims or, alternatively, not plausibly alleged. The Court will address the claim for minimum wages under the FLSA before analyzing Plaintiffs' claims for unjust enrichment.

1. FLSA Minimum Wage Claim

Mediacom seeks to dismiss solely the FLSA claims for minimum wages during Plaintiffs' training periods. The FLSA mandates that employers pay their employees a minimum wage. 29 U.S.C. § 206(a). An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). A plaintiff pursuing FLSA claims must show the existence of an employer-employee relationship. *Childress v. Ozark Delivery of Mo. L.L.C.*, 95 F. Supp. 3d 1130, 1138 (W.D. Mo. 2015) ("The existence of an employer-employee relationship is a prerequisite to asserting a claim under the FLSA."); *see Ash v. Anderson*

[1] Broadband joined Mediacom's motion, however, its joinder was conclusory and failed to make any specific arguments with respect to allegations concerning Broadband's relationship to Plaintiffs during their training periods that would support dismissal of the FLSA minimum wages claim against Broadband. At the hearing, Broadband conceded the allegations in the Complaint were sufficient to show Plaintiffs have stated a plausible claim for minimum wages during their training periods against Broadband. Thus, the minimum wage claims against Broadband will go forward.

[2] Mediacom additionally argues that Plaintiffs failed to plausibly allege that they did not receive minimum wages during regular workweeks. Plaintiffs have waived their FLSA minimum wage claims for nontraining workweeks but maintain their claims for minimum wages during training periods. [ECF No. 32 at 6 n.1].

*Merchandisers, LLC*, 799 F.3d 957, 961 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 804 (2016) (finding the plaintiffs had failed to establish a FLSA claim because they did not sufficiently allege the defendants were their employer).

The United States Court of Appeals for the Eighth Circuit has stated that "the test of employment under the FLSA is one of 'economic reality.'" *Ash*, 799 F.3d at 961 (quoting *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985)). In applying this test, federal courts examine "who has operating control over the employees, and consider whether the alleged employer: (1) possessed the power to hire and fire employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate or method of payment; and (4) maintained employee records." *Roeder v. DIRECTV, Inc.*, No. C14-4091-MWB, 2015 WL 5603050, at *5 (N.D. Iowa Sept. 22, 2015).

To establish a violation of the minimum-wage requirements of the FLSA, a plaintiff "must demonstrate that [he or she] was engaged in compensable activity within the meaning of the statute and that the wages received for that activity, if any, were below the statutory minimum wage." *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 355 (8th Cir. 1986). Here, Plaintiffs allege they were required to undergo training for one to three weeks for forty to fifty hours per week, and that, regardless of the amount of hours/weeks of training they attended, they received a flat fee of approximately $600. [ECF No. 1 ¶ 33]. Plaintiffs have thus met this requirement. The question then is limited to whether Plaintiffs have sufficiently alleged Mediacom acted as their employer during their training periods so as to make it liable for any FLSA minimum wage violations. As explained below, the Court concludes Plaintiffs have not done so.

As previously discussed, the Eighth Circuit addressed pleading requirements for FLSA claims in *Ash*. In that case, the plaintiffs' complaint did not "include any facts describing the

'economic reality' of their employment, such as their alleged employers' right to control the nature and quality of their work, the employers' right to hire or fire, or the source of compensation for their work." *Ash*, 799 F.3d at 961. Instead, the complaint merely alleged the three defendants "were part of an integrated enterprise and, as such, were plaintiffs' employer. During all relevant times . . . all of these defendants shared interrelated operations, centralized control of labor relations, common management and common ownership and/or financial control." *Id*. The court concluded that this was "a restatement of the legal test used to determine whether certain entities constitute a joint employer for the purpose of civil rights litigation" and insufficient to show a FLSA employer-employee relationship under Rule 12(b)(6). *Id*. at 961–62. In reaching this determination, the court stated "[i]t is important to note that [plaintiffs] were not required to determine conclusively which of the three defendant companies was their employer at the pleadings stage or describe in detail the employer's corporate structure." *Id*. at 961.

Plaintiffs essentially ask the Court to make a threshold determination that Broadband and Mediacom act as joint employers. Then, by virtue of that relationship, the Court should hold Mediacom liable for any FLSA violations that occurred during Plaintiffs' employment, including their training periods.

However, both the factual allegations in Plaintiffs' Complaint and the economic reality test undermine Plaintiffs' argument. *Ash* does not address a situation like the one before this Court, where a defendant is seeking dismissal of a claim based on challenged compensation scheme that was in force during a discrete employment period. However, its reasoning is nonetheless helpful in analyzing the instant issue, particularly its directive to examine factual allegations describing the economic reality of the plaintiffs' employment. The economic reality test approved by the Eighth Circuit in *Ash* requires plaintiffs to plead specific facts demonstrating that an entity

amounted to an employer. *See id*. Under general pleading requirements, the factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (alteration in original) (quoting *Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678)).

Here, one of Plaintiffs' alleged FLSA violations is based on a compensation scheme only in effect during a discrete time period—the training period. When examining their minimum wage claims independently from their overtime claims, the Court sees nothing in the Complaint providing factual support for Plaintiffs' contention that Mediacom acted as their employer during their training periods. Plaintiffs' claim hinges solely on their allegation that Mediacom exercised substantial control over Broadband. Under *Ash*, this one allegation is insufficient to show that Mediacom plausibly exercised any control over Plaintiffs or their employment conditions during their training periods. Plaintiffs make no factual allegations at all regarding Mediacom's role in their training. There is no indication Mediacom required this training or dictated any of its terms, including the pay scale. Conversely, the Complaint specifically states that *Broadband* required the training, and *Broadband* paid Plaintiffs a flat rate that amounted to less than minimum wage, depending on the length of the training. *See* [ECF No. 1 ¶¶ 32–33].

As a general matter, the Court is wary of the notion of assigning liability for only certain periods of employment. However, Plaintiffs' claim only covers a discrete period of time—the training period—during which Plaintiffs have not alleged that Mediacom had any involvement whatsoever. Under these clear-cut circumstances, the Court cannot find that Plaintiffs have plausibly alleged that Mediacom is liable for the alleged misconduct. The Court stresses that this outcome is due to the unique, direct correlation of the claims and time periods presented here. Accordingly, the Court finds Mediacom's motion is granted with respect to the FLSA minimum

wage claims against Mediacom. The Court further grants Plaintiffs leave to amend. *See Rozo v. Principal Life Fin. Ins. Co.*, No. 4:14-CV-000463, 2015 WL 9920548, at *3 (S.D. Iowa Sept. 21, 2015).

2. Unjust Enrichment Claim

Defendants also seek to dismiss Plaintiffs' common law claims for unjust enrichment on the bases that "(1) those claims are preempted to the extent they depend on the same allegations on which Plaintiffs' statutory claims for minimum wages, overtime, and violation of the IWPCL depend, and (2) with respect to any allegations that extend beyond those which would support such a statutory violation, Plaintiffs have failed to plausibly allege such conduct resulted in Mediacom's unjust enrichment." [ECF No. 27 at 2].

"Unjust enrichment is a doctrine that 'evolved from the most basic legal concept of preventing injustice.'" *In re Estate of Roethler*, 801 N.W.2d 833, 845 (Iowa 2011) (quoting *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001)). "To recover for unjust enrichment, [the plaintiff] must show: '(1) [the defendant] was enriched by the receipt of a benefit; (2) the enrichment was at the expense of [the plaintiff]; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances.'" *Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n*, 666 F.3d 1099, 1112 (8th Cir. 2012) (quoting *Palmer*, 637 N.W.2d at 154–55). Alleged benefits can be those conferred directly, indirectly, or by third parties. *Palmer*, 637 N.W.2d at 155. "The critical inquiry is that the benefit received be at the expense of the plaintiff." *Id.*

Courts differ on whether to allow a plaintiff to pursue both theories of recovery, and the parties have each marshaled support for their respective arguments. *Compare Gutwirth v. Woodford Cedar Run Wildlife Refuge*, 38 F. Supp. 3d 485, 491 (D.N.J. 2014) ("[T]he Court

concludes that the FLSA preempts Plaintiff's proposed unjust enrichment claim because Plaintiff's FLSA overtime claim and proposed unjust enrichment claim rest upon the identical predicate: specifically, Defendants' alleged failure to provide appropriate overtime compensation."), *with Robertson v. LTS Mgmt. Servs. LLC*, 642 F. Supp. 2d 922, 928 (W.D. Mo. 2008) (allowing plaintiffs to pursue state law claims for breach of contract, quantum meruit, unjust enrichment, and claims under a Missouri wages act "even if the state law claims were found to be duplicative"). However, many of the cases allowing both claims to proceed concurrently have addressed whether unjust enrichment claims are preempted by the FLSA under federal preemption theories such as field and conflict preemption. *See, e.g.*, *Byrd v. BJC Health Sys.*, No. 4:11CV1571 HEA, 2013 WL 1581420, at *2 (E.D. Mo. Apr. 12, 2013). The question here is not whether the claims are preempted by the FLSA in that sense but whether Plaintiffs have plausibly alleged a claim for unjust enrichment under Iowa law.

Defendants argue Plaintiffs may not support their claims for unjust enrichment with allegations of misconduct for which they have statutory remedies. This proposition is not as free from doubt as Defendants would have the Court believe;[3] however, the Court finds that even accepting it as true, Plaintiffs have stated a claim for unjust enrichment.

Plaintiffs seek recompense for unpaid overtime and minimum wages, as well as amounts wrongfully deducted from their pay and equipment and other business costs that should have been paid by their alleged employers. Plainly, not all of those alleged amounts are recoverable under

---

[3] In *Palmer*, the Iowa Supreme Court noted the requirement "that there be no at-law remedy available to the plaintiff" is not an element of recovery for unjust enrichment. 637 N.W.2d 142, 154 n.2. Rather, "[t]he adequacy of a legal remedy is a general limitation on the exercise of equity jurisdiction and is properly considered when restitution is sought in equity, but no independent principle exists that restricts restitution to cases where alternative remedies are inadequate." *Id.* at 154–55.

the FLSA, which only allows for claims for unpaid wages and pay deductions that caused wages to fall below minimum wage. Plaintiffs can therefore seek the balance as restitution under an unjust enrichment theory.

Undoubtedly, Plaintiffs cannot obtain a double recovery. Thus, though Count III is not specifically pled in the alternative, double damages will not be awarded for the same injury. *See id*. This principle will sufficiently limit Plaintiffs' unjust enrichment claims to restitution not otherwise recoverable. *See Palmer*, 637 N.W.2d at 154–55, n.1, 2. Consequently, the Court denies Defendants' motion to dismiss Plaintiffs' unjust enrichment claims.

## III. MOTION FOR CONDITIONAL CERTIFICATION

### *A. Analysis*

Plaintiffs move for conditional certification of this action as a collective action brought on behalf of:

> All Technicians who were classified as independent contractors while performing installation and repair work for Broadband Installations of Iowa, [LLC] on behalf of Mediacom in the United States from May 19, 2014 to the present.[4]

[ECF No. 31 at 8]. In support of their motion, Plaintiffs submit several of their own declarations, as well as those of additional opt-in plaintiffs and a former Broadband supervisor. *See* [ECF Nos. 31-3; 31-4; 31-5; 31-6; 31-7; 31-8]. Mediacom resists Plaintiffs' request for conditional certification in its entirety, arguing Plaintiffs have failed to meet their burden in showing a conditional class should be allowed to pursue its claims against Mediacom. For its part, Broadband concedes that Plaintiffs meet the standard for conditional certification for individuals classified as

[4] The Court has changed "Broadband Installations of Iowa, Inc.," to Broadband Installations of Iowa, LLC, to correct a likely error, as noted by Broadband in its Resistance. *See* [ECF No. 38 at 1].

independent contractors while working in Iowa. However, it argues conditional certification of a nationwide class should not be granted.

Section 216(b) of the FLSA allows actions against employers to be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). In FLSA class actions, courts, including those in the Eighth Circuit, have used a two-step process. *See, e.g.*, *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1082 (D. Minn. 2014); *Arnold v. DirecTV, Inc.*, No. 4:10-CV-352-JAR, 2012 WL 4480723, at *2 (E.D. Mo. Sept. 28, 2012); *Andersen v. Wells Fargo Fin., Inc.*, No. 4:11-CV-00085, 2012 WL 12871958, at *2 (S.D. Iowa Feb. 6, 2012); *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 890–891 (N.D. Iowa 2008); *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007).

At the first step, plaintiffs move for conditional certification, allowing a class to be certified merely for notice purposes. *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005). In accordance with the statute, plaintiffs must show the existence of putative class members who are "similarly situated," a term the FLSA leaves undefined. *See* 29 U.S.C. § 216(b). Generally, courts "require[] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99–100 (S.D. Iowa 2008) (quoting *Bouaphakeo*, 564 F. Supp. 2d at 892). "A plaintiff's burden when seeking conditional certification is not onerous and the merits of a plaintiff's claims are not considered." *Arnold*, 2012 WL 4480723, at *2. After a court conditionally certifies a class, notice is sent to potential class members and they are given the opportunity to opt into the action. *Kautsch*, 504 F. Supp. 2d at 688. "The decision to create an opt-in class under [section] 216(b), like the decision on class certification under Rule 23, remains

soundly within the discretion of the district court." *Andersen*, 2012 WL 12871958, at *2 (quoting *Saxton v. Title Max of Ala., Inc.*, 431 F. Supp. 2d 1185, 1187 (N.D. Ala. 2006)).

Under the second step, defendants may move to decertify the class after or near the close of discovery. *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1019 (S.D. Iowa 2016). "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). If the court finds the conditional class members are not similarly situated and decertifies the class, the claims of the opt-in plaintiffs are dismissed without prejudice, leaving only the original plaintiffs to proceed in the action. *See Arnold v. DirecTV, LLC*, No. 4:10-CV-352-JAR, 2017 WL 1251033, at *9–*10, *13 (E.D. Mo. Mar. 31, 2017) (decertifying class and dismissing opt-in plaintiffs without prejudice).

The Court will begin by addressing Mediacom's arguments since Mediacom argues against the motion in its entirety, whereas Broadband only seeks to limit its scope. Mediacom first argues Plaintiffs have failed to meet their evidentiary burden because they must demonstrate they are similarly situated with respect to the joint employment factors of the economic realities test and have not done so. *See, e.g.*, *Christianson v. NewPark Drilling Fluids, LLC*, No. CIV.A. H-14-3235, 2015 WL 1268259, at *4–5 (S.D. Tex. Mar. 19, 2015) (evaluating whether putative class members were "similarly situated for purposes of applying the economic realities test at the appropriate phase of this case in the future"). However, such a requirement would add an additional dimension to the similarly situated inquiry that has not generally been considered by the courts in this circuit. *See, e.g.*, *Coates v. Dassault Falcon Jet Corp.*, No. 4:17CV00372 JLH, 2017 WL 5598219, at *3–*4 (E.D. Ark. Nov. 21, 2017) (finding putative class members were similarly

situated where plaintiffs alleged potential members performed similar duties and were subject to a common policy without mentioning or considering the economic realities test); *Mayberry v. SSM Health Buss.*, No. 4:15-CV-1680-CEJ, 2017 WL 2334981, at *3 (E.D. Mo. May 30, 2017) (same); *Cooper v. Integrity Home Care, Inc.*, No. 4:16-CV-01293-DGK, 2017 WL 1628974, at *3 (W.D. Mo. May 1, 2017) (same); *Mayfield-Dillard v. Direct Home Health Care, Inc.*, No. CV 16-3489 (RHK/TNL), 2017 WL 945087, at *2 (D. Minn. Mar. 10, 2017) (same); *Hamilton v. Capex Oilfield Servs., Inc.*, No. 1:16-CV-063, 2016 WL 9506025, at *2 (D.N.D. Oct. 24, 2016) (same); *Aaron v. Summit Health & Rehab., LLC*, No. 1:12-CV-1112, 2014 WL 1095829, at *3 (W.D. Ark. Mar. 19, 2014) (same); *Judkins v. Southerncare, Inc.*, No. 4:12-CV-00293, 2013 WL 12099652, at *4 (S.D. Iowa June 24, 2013) (same).

Additionally, despite the distinction Mediacom makes with respect to future application of the economic realities test versus present application of the test, such a consideration treads further into the merits of this case than the Court cares to venture at this juncture. The same can be said for Mediacom's arguments regarding its control, or lack thereof, over potential class members. Indeed, "[t]he weight of authority favors the position that conditional certification may be ordered before the employment relationship should be clarified, particularly in misclassification cases." *Benion v. Lecom, Inc.*, No. 15-14367, 2016 WL 2801562, at *11 (E.D. Mich. May 13, 2016); *see Arnold*, 2012 WL 4480723, at *5 ("The fact that threshold employment questions exist does not keep the Court from considering the propriety of conditionally certifying the collective action."); *Putman v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 274 (S.D. Iowa 2011) ("Making a determination, at this time, of whether the satellite installation technicians were independent contractors or employees pursuant to the 'economic realities' test, would . . . improperly delve into the merits of Plaintiffs' claim.").

Next, Mediacom argues individualized inquiries regarding each class member's employment relationship to Mediacom preclude conditional certification. However, courts "consistently hold that such potential defenses and individualized inquiries should not prevent conditional certification . . . and are more appropriately addressed through a decertification motion." *Meseck v. TAK Commc'ns, Inc.*, Civ. No. 10–965 (JRT/AJB), 2011 WL 1190579, at *6 (D. Minn. Mar. 28, 2011). This is because "[p]laintiffs need not show that members of the conditionally certified class are a*ctually* similarly situated. That determination will be made after the close of discovery." *Kautsch*, 504 F. Supp. 2d at 689 (emphasis added). "Simply identifying differences between the parties is not enough to defeat a motion for class certification at this notice stage." *Ondes v. Monsanto Co.*, 2011 WL 6152858, at *6 (E.D. Mo. Dec. 12, 2011) (quoting *Helmert v. Butterball, LLC*, 2009 WL 5066759, at *4 (E.D. Ark. Dec. 15, 2009)). "Even if these differences may affect the plaintiffs' ability to prove liability, the Court does not reach the merits of the parties' claims and defenses at the certification stage." *Mayberry*, 2017 WL 2334981, at *3; *see Tegtmeier*, 208 F. Supp. 3d at 1020 (declining to address defendant's argument that one named plaintiff's unreimbursed driving shifts would "render [his] personal 'factual and employment setting[ ]' unduly distinct from other delivery drivers" because such a question was not properly addressed at the conditional certification stage (second alteration in original)).

The Court rejects Mediacom's arguments. This action is in the early stages and consideration of the merits of Plaintiffs' claims, such as whether Mediacom acted as Plaintiffs' joint employer, is not appropriate. These arguments are more properly the subject of later motions for decertification or summary judgment. Furthermore, denying Plaintiffs' motion only as to Mediacom would force putative class members to both opt-in to a class to pursue its claims against Broadband, and seek to either join this action as an individual plaintiff or file their own individual

actions to pursue their claims against Mediacom. Such an outcome hardly promotes judicial efficiency. Mediacom does not cite any cases that have proceeded in a like fashion and the Court is not aware of any.

The Court finds Plaintiffs have provided sufficient evidence that they and others similarly situated were subjected to a common decision, plan, or policy. Plaintiffs have submitted declarations from five opt-in plaintiffs who performed work for Defendants in three states and one Broadband supervisor. All of the opt-in plaintiffs state they were paid on a piece-rate basis and that they were regularly required to work more than forty hours per week without receiving additional compensation. They all performed the same type of work and were all classified as independent contractors. They further state other technicians with whom they interacted were similarly classified and worked similar hours. Accordingly, the Court finds the proposed class should be conditionally certified under section 216(b).

The Court turns now to the consideration of Broadband's contentions. Broadband has conceded that class certification should be granted with respect to members of the putative class who worked in Iowa. Broadband argues that a nationwide class, however, should not be certified.

The Court declines to limit the geographic scope of the class. First, Broadband has not successfully persuaded the Court that members of the putative class outside of Iowa should be excluded from the conditional class. Although Broadband states "nearly all" of the evidence produced by Plaintiffs relates to operations in Iowa, [ECF No. 38 at 3], two of the five declarations provided by opt-in plaintiffs are from individuals who worked in Georgia, one of whom also briefly worked out of a Broadband facility in Delaware. Neither these plaintiffs nor Broadband have identified significant differences in the employment of putative members who worked in Georgia and Delaware, which are other areas where Broadband has significant operations.

Second, as Plaintiffs point out, a nationwide class is particularly appropriate in light of the fact that putative class members who worked in other states may have signed agreements containing Iowa forum selection clauses and choice of law provisions, such as the signed agreement of the opt-in plaintiff who worked in Georgia and Delaware. *See* [ECF No. 31-7 at 12]. As of yet, there is no evidence of other contracts, and Broadband counsel conceded that Iowa is the selected forum nationwide at the hearing before the Court.

Lastly, the authority Broadband cites in support of limiting the class is not persuasive as it is readily distinguishable. The plaintiff–employees in that case worked at only two out of 1500 locations, and the defendant–employer provided evidence that not all of the employees at one of those locations had been subjected to the same policies or violations. *See Harris v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 564, 567, 570–71 (D. Minn. 2014). As previously noted, Broadband has not provided any evidence of differences in employment policies or employee classification among its locations, and Plaintiffs' evidence suggests Broadband's practices are similar, if not the same, across Iowa and other states.

In conclusion, the Court finds Plaintiffs have met their burden of showing the existence of similarly situated putative class members, and consequently their motion for conditional certification will be granted.

### *B. Content of Plaintiffs' Proposed Notice*

Finally, both Defendants challenge various provisions of Plaintiffs' proposed notice. Broadband proposes the Court order a meet-and-confer between the parties to discuss the terms of the notice and, given the many contentions regarding the language of the notice, the Court will do so. However, the Court will also address some of the notice issues.

First, the Court notes the date in the proposed class must be changed to reflect the three-year state of limitations for these actions. The parties agree the statute of limitations runs back three years from the date of this Order, plus fourteen days of equitable tolling for an extension of time granted to Defendants. The Court tolls the statute of limitations from the date of this Order until the notice period begins to run. Second, the Court finds that allowing a ninety-day window for potential class members to opt in is appropriate in this case. Finally, the Court will deny Plaintiffs' request that the notice be posted on Defendants' premises and Plaintiffs' request that Defendants turn over the telephone numbers of putative class members.

## IV. CONCLUSION

For the forgoing reasons:

The Court GRANTS in part Defendants' Motion for Partial Dismissal. The remainder of Defendants' motion is DENIED. The Court further GRANTS Plaintiffs leave to amend their Complaint. Plaintiff shall have thirty days in which to file their amended complaint.

The Court GRANTS Plaintiffs' Motion for Conditional Certification consistent with the provisions of this Order. Defendants are ordered to turn over to counsel for Plaintiffs the names, last known addresses, and email addresses of putative members of the class within fourteen days of this Order. The parties shall meet and confer to reach an agreement regarding the language of the notice within twenty-one days of this Order. After such time, the parties will submit notice and consent forms for judicial approval.

IT IS SO ORDERED.

Dated this 19th day of December, 2017.

__________________________________
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT