IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| SCOTT OXFORD, individually and on behalf of all persons similarly situated, CHRISTOPHER COLEMAN, individually and on behalf of all persons similarly situated, JONATHAN GUY, individually and on behalf of all persons similarly situated, and TIFFANY GOTSIS, individually and on behalf of all persons similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>BROADBAND INSTALLATIONS OF IOWA, LLC, and MEDIACOM COMMUNICATIONS CORP.,<br><br>    Defendants. | 4:17-cv-178-RAW<br><br><br><br><br><br><br><br><br><br>RULINGS AND ORDERS ON MEDIACOM'S MOTION TO FILE DOCUMENTS UNDER SEAL AND PLAINTIFFS' UNOPPOSED MOTION TO APPROVE THE SETTLEMENT AND ATTORNEYS' FEES AND COSTS |

The above motions [96] [105] are before the Court. Plaintiffs filed their Complaint on May 19, 2017. In three counts they alleged violations of the Fair Labor Standards ("FLSA"), 29 U.S.C. § 201 et seq. (Count I), violations of the Iowa Wage Payment Collection Law, Iowa Code ch. 91A (Count II), and unjust enrichment (Count III).

**I.**

Plaintiffs were cable installation technicians who did work for Broadband in servicing Mediacom customers. In a nutshell, they alleged defendants Broadband and Mediacom (alleged to be a joint employer) misclassified them as independent contractors and, as a result, failed to pay them overtime compensation and made unlawful deductions from their pay. Plaintiffs also claimed Broadband failed to pay them the minimum wage during their training period. The FLSA claim in

Count I was brought as a collective action pursuant to 29 U.S.C. § 216(b). The state law wage payment and unjust enrichment claims were brought as a Fed. R. Civ. P. 23 class action on behalf of similarly situated installation technicians. (Complaint [1] ¶¶ 14, 15).

On December 19, 2017, the Court granted plaintiffs' motion for conditional certification of an FLSA class consisting of "[a]ll Technicians who were classified as independent contractors while performing installation and repair work for Broadband . . . on behalf of Mediacom in the United States from May 19, 2014 to the present." (12/19/17 Order [47] at 12, 19). No motion for Rule 23 class certification has been filed and the case was settled prior to the deadline to do so. Court-approved notice and opt-in forms were sent to the collective action class. Eventually 190 technicians opted-in.

At the parties' request, a court-sponsored settlement conference was held before me on May 16, 2018. LR 72B(a). The case did not settle at the conference, but two days later the Court was informed the parties had reached a settlement. A deadline was set for the filing of a motion to approve the settlement and related documents.

On June 8, 2018, the parties filed a consent to magistrate judge jurisdiction and the case was referred to me for all further proceedings in accordance with 28 U.S.C. § 636(c) [94] [95]. The deadline to submit settlement documents was extended to June 14, 2018. (6/8/18 Order [93]).

On June 14, 2018, Mediacom filed the present Motion to File Documents Under Seal [96]. The motion recited the parties had agreed to keep the terms of the settlement confidential and that Mediacom desired confidentiality be maintained "during the Court's review and potential approval of the settlement." (*Id*. at 1). The subject had come up earlier in a June 8, 2018, status conference with the Court. By order entered June 14, 2018, the Court provisionally allowed plaintiffs' anticipated motion to approve the settlement and settlement agreement to be filed under seal

indicating a final ruling would in due course be made on the motion. (6/14/18 Order [97]). That ruling is below.

A dispute arose between plaintiffs and Mediacom concerning confidentiality. The Court discussed the issue with counsel in a June 26, 2018, telephonic status conference [100]. Counsel were to continue discussion of the issue. Hearing nothing further, on July 13, 2018, the Court entered an order requiring counsel to confer and submit a status report concerning settlement. (7/13/18 Order [101] at 2). On July 23, 2018, by joint status report [102] the parties advised that all remaining disputes about the settlement had been resolved. On July 31, 2018, plaintiffs filed under seal the present Motion to Approve Settlement [105] together with the signed Settlement Agreement [105-2] and associated materials.

## II.

Motion to File Documents Under Seal

A final order will be entered granting the motion in part. The original documents may remain under seal, but redacted versions of plaintiffs' Motion to Approve the Settlement, Settlement Agreement, and supporting documents will be filed in the public record as directed below.

The final Settlement Agreement does not contain a confidentiality provision. The proposed settlement notice to be sent to opt-in class members, incorporated in the Settlement Agreement by reference, provides that the recipient settlement members who negotiate their settlement check will keep the amount of their individual settlement award confidential with certain exceptions. Limited confidentiality with respect to the amounts received by the 190 individual settlement members intrudes very little on public access or FLSA policy interests, particularly in view of the other settlement terms which will be public. Maintaining the confidentiality of amounts received by the

individual settlement members seems to the Court a reasonable limitation and evidently was an important factor in achieving settlement.

Motion to Approve the Settlement

An FLSA settlement may be approved if it "represents a fair compromise of a bona fide wage and hour dispute." *Harris v. Chipotle Mexican Grill, Inc.*, No. 13-cv-1719(SRN/SER), No. 14-cv-4181 (SRN/SER), 2018 WL 617972, at *4 (D. Minn. January 29, 2018) (quoting *McInnis v. Ecolab, Inc.*, Civ. No. 11-02196 (SRN/JJK), 2012 WL 892187, at *2 (D. Minn. February 17, 2012)); *see Roeder v. DIRECTV, Inc.*, No. C14-4091-LTS, 2017 WL 3499942, at *1 (N.D. Iowa July 19, 2017); *Hansen v. Per Mar Security Services*, No. 4:09-cv-00459-RAW, No. 3:12-cv-00113-RAW, 2013 WL 12310935 (S.D. Iowa May 15, 2013). In determining whether an FLSA settlement is fair and reasonable "[f]actors a court may consider include the stage of the litigation and amount of discovery exchanged, the experience of counsel, the probability of plaintiffs' success on the merits, any 'overreaching' by the employer in the settlement negotiations, and whether the settlement was the product of arm's length negotiations between represented parties based on the merits of the case." *Sanderson v. City of Potosi*, Case No. 4:13-CV-1457 NAB, 2016 WL 1746084, at *1 (E.D. Mo. May 3, 2016) (quoting *King v. Raineri Const., LLC*, Case No. 4:14-CV-1828 (CEJ), 2015 WL 631253, at *2 (E.D. Mo. February 12, 2015)); *see Harris*, 2018 WL 617972, at *4 (quoting *Netzel v. West Shore Group, Inc.*, Court File No. 16-cv-2552 (RHK/LIB), 2017 WL 1906955, at *2 (D. Minn. May 26, 2017); *Hansen*, 2013 WL 12310935, at *2 (quoting *Moore v. Ackerman Inv. Co.*, No. C 07-3058-MWB, 2009 WL 2848858, at *2 (N.D. Iowa September 1, 2009)).

a.    Bona Fide Dispute.

There was certainly a bona fide dispute between the parties. Plaintiffs alleged defendants misclassified them as independent contractors when in truth they were employees. On their part, defendants insisted the technicians were independent contractors. Resolution of the issue would have involved a "fact-intensive 'individualized inquiry'" requiring consideration of a number of factors incorporated in the "economic realities" test employed by the Eighth Circuit. *Roeder v. DIRECTV, Inc.*, No. C14-4091-LTS, 2017 WL 151401, at *10 (N.D. Iowa January 13, 2017). The status of cable installation technicians has been the subject of considerable litigation elsewhere. Courts have reached varying outcomes on the employer/independent contractor issue. *Id*. n. 11 (collecting cases). Both sides expressed confidence in their positions on the issue, but no party could be assured of prevailing.

To impose liability on Mediacom, the more substantial of the two defendants, plaintiffs would also have had to establish it was a joint employer with Broadband, an additional disputed contention. Defendants also disputed that any FLSA violation was willful or knowing. If not, plaintiffs' recovery would have been limited by a two-year FLSA limitations period. *See* 29 U.S.C. § 255(a). At some point defendants would likely have moved to decertify the collective action. Motions for summary judgment would have challenged plaintiffs' misclassification and joint employer allegations. Had the case gone the full course the substantial cost involved to resolve these issues would have complicated settlement at a later date. "A settlement is bona fide if it reflects a reasonable compromise over issues actually in dispute . . . ." *King*, 2015 WL 631253, at *2. The settlement here fully meets this standard.

b.   Relevant Factors.

The case settled following a court-sponsored settlement conference held at about the time the opt-in period ran. The settlement occurred relatively early in the case. A trial date had not been set and discovery was in its early stages. All parties believed early settlement negotiations held the most promise to be productive. Plaintiffs' counsel had obtained adequate information about the opt-in class members' wage rate and alleged improper deductions from their pay. Defendants produced time log data showing when each technician logged the beginning and end of each job. This, together with information provided by the opt-in members enabled plaintiffs' counsel to prepare a comprehensive damages analysis. Though not thoroughly plumbed in discovery, the fact issues pertaining to liability were well understood by all counsel.

The parties were represented by able and experienced counsel. Plaintiffs were represented by lead counsel from two law firms with extensive experience in labor and employment law, specializing in wage and hour class and collective actions. They were assisted by local counsel knowledgeable about the rules and practices in this district.

As indicated above, the probability of plaintiffs' success on the merits is difficult to gauge in view of the many issues in play, but plaintiffs were faced with factual and legal hurdles which made recovery, and the amount if any, uncertain. The settlement negotiations were arm's length and extensive with all sides vigorously advancing their positions at the settlement conference and afterward until final compromise was achieved. No "overreaching" by defendants was in evidence.

c.   Specific Settlement Provisions.

The total settlement amount is of course less than plaintiffs would have achieved had they proved FLSA liability, the full amount of actual and liquidated damages, and established the expansive three-year limitations period was applicable. Given the litigation risks, however, the

settlement amount is reasonable and will provide most opt-in class members with significant compensation for their alleged unpaid overtime and improper deductions. The Court notes the settlement amount is non-reversionary. The amount of any uncashed checks will be paid to a *cy pres* beneficiary, "Public Justice," an organization which represents low-wage workers.

The settlement agreement provides a reasonable method to determine each opt-in member's share of the net settlement amount. Each member will receive a minimum amount plus, for the great majority of members, a *pro rata* distribution based on the overtime worked (assuming a 10-hour day) by each member and deductions taken from their pay, both in relative proportion to the overtime and deduction amounts for other members as shown on the distribution schedule [105-3]. *See Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 626, 630 (S.D. Iowa 2016), *judgment aff'd*, 847 F.3d 934 (8th Cir. 2017)(approving class action *pro rata* allocation). Plaintiffs' counsel appears to have sufficient information to make the *pro rata* allocation.

The proposed service awards to the named plaintiffs are reasonable. Such awards are routinely made, *see Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009), and here are unremarkable in amount. *See id.*; *Harris*, 2018 WL 617972, at *3. The Court is informed that plaintiffs provided useful background information, worked with counsel to produce declarations in support of conditional certification, and helped prepare for the settlement conference. They traveled to Des Moines for the full day settlement conference and were active participants.

The Settlement Agreement provides plaintiffs' counsel will receive one-third of the gross settlement amount for fees and expenses in litigating the lawsuit as well as the costs going forward of administering the settlement in-house. A prevailing plaintiff in an FLSA case may recover his or her attorney fees and expenses under the FLSA's fee-shifting provision. 29 U.S.C. § 216(b). It

is well-established that in a common fund case a court may base a fee award on a percentage of the fund. *See*, *e.g.*, *In re Life Time Fitness, Inc. TCPA Litigation*, 847 F.3d 619, 622 (8th Cir. 2017)(citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)); *Yarrington v. Solvay Pharmaceuticals, Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010)(citing *Petrovic*); *In re Xcel Energy, Inc. Sec. Derivative & "ERISA" Litigation*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (citing *Petrovic*). The Court also has discretion to determine a reasonable fee by using the "lodestar" method, generally the attorney hours expended times a reasonable hourly rate. *Lifetime Fitness*, 847 F.3d at 622. Here the Court will exercise its discretion to accept the percentage method proposed, believing that it is the most reasonable basis to assess attorneys' fees in this case.

While the case settled before extensive discovery was conducted, initiating and maintaining this collective action legitimately required a significant investment of time and effort by plaintiffs' counsel. Counsel undertook representation on a contingent fee basis. Conditional certification was contested and once achieved plaintiffs' counsel undertook the labor of sending notices to the collective class and following up with telephone calls to those who did not respond. Counsel responded to Mediacom's motion for partial dismissal. Counsel sought and received informal discovery to enable damages calculations essential to negotiate settlement. As noted, plaintiffs benefitted from counsel's expertise and ability in pursuing FLSA collective actions. The fee award must also compensate counsel for the work yet to be done in sending notice of the settlement to the opt-in class members and administering disposition of the settlement proceeds as well as expenses incurred in prosecuting the litigation. All of this supports approval of the requested one-third attorneys' fee, a percentage in line with common fund awards in this district and elsewhere in the circuit. *See*, *e.g.*, *Huyer*, 314 F.R.D. at 629 (33-1/3%); *Yarrington*, 697 F.

Supp. 2d at 1061 (33% and observing "[i]n the Eighth Circuit, courts have routinely awarded attorney fees ranging from 25% to 36% of a common fund"); *Wineland*, 267 F.R.D. at 677 (33%).

If the Court were to employ the lodestar method for the hours and rates claimed by plaintiffs' counsel in their declarations [105-1, 105-5, 105-6], the award would approximate the percentage fee claimed. On closer look, the Court might or might not accept the hourly rates claimed or the necessity of the hours expended when multiple counsel are involved, but the Court is confident any lodestar amount it would calculate would result in a multiplier less than 2 in comparison with the one-third percentage, a lodestar multiple which indicates the requested percentage fee is not excessive. *See*, *e.g.*, *Huyer*, 314 F.R.D. at 629 (approving award with a lodestar multiplier of 1.82); *Xcel*, 364 F. Supp. 2d at 999 (approving award with multiplier of 4.7).

Lastly, the Court has reviewed and approves the proposed Settlement Notice to be sent to class members [105-2].

### III.

The Court rules and orders as follows concerning the captioned motions: Mediacom's Motion to File Documents Under Seal [96] is **granted in part**. Not later than fourteen (14) days from the date hereof plaintiffs shall file their Motion to Approve the Settlement and Attorneys' Fees and Costs [105], the Settlement Agreement [105-2] and supporting documents [105-1, 105-4, 105-5, 105-6 and 105-7] in the public record, redacting therefrom any reference to the amount received by individual class members. The distribution schedule [105-3] shall remain sealed.

Plaintiffs' Motion to Approve the Settlement and Attorneys' Fees and Costs [105] is **granted**. Specifically, the Settlement Agreement, attorneys' fees and costs in the amount of one-third of the total settlement amount, the proposed service payments to plaintiffs Scott Oxford, Christopher Coleman, Jonathan Guy and Tiffany Gotsis, and the plan of notice to the class

members including the content of the proposed notice are approved. The settlement funds will be distributed as set forth in the Motion to Approve.

Plaintiffs' Complaint is dismissed with prejudice on plaintiffs' motion. The Clerk shall enter judgment accordingly. The Court retains jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of the Settlement Agreement and all orders and judgments entered in connection with the Settlement Agreement, including these Rulings and Orders.

IT IS SO ORDERED.

Dated this 27th day of August, 2018.

ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE