**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| | : | |
| **SCOTT OXFORD, CHRISTOPHER COLEMAN, JONATHAN GUY, and TIFFANY GOTSIS individually and on behalf of all persons similarly situated,** | : : : : | **Civil Action No. 4:17-CV-178-SMR-RAW** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BROADBAND INSTALLATIONS OF IOWA, LLC, and MEDIACOM COMMUNICATIONS CORP.,** | : : : | |
| | : | |
| **Defendants.** | : | |

**PLAINTIFFS' UNOPPOSED MOTION TO APPROVE THE SETTLEMENT AND
ATTORNEYS' FEES AND COSTS AND MEMORANDUM OF LAW IN SUPPORT**

## I.    INTRODUCTION

Plaintiffs filed this lawsuit on behalf of themselves and similarly situated technicians who were hired by Defendant Broadband Installations of Iowa, LLC to perform installations and repairs for Defendant Mediacom Communications Corp. customers throughout the United States. Plaintiffs allege that Defendants misclassified them as independent contractors and violated the federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") by failing to pay them overtime for hours worked in excess of 40 a week, and further violated the Iowa Wage Payment and Collection Law ("IWPCL"), Iowa Code § 91A.5, by making deductions from the technicians' pay for things such as equipment, damage claims made by customers, if further work was required on an installation performed by the technicians within 30 days, and insurance. Defendants deny all of Plaintiffs' claims on the grounds that their pay policies and practices are legal and valid under all relevant laws.

1

After considerable negotiations and a full-day, in-person mediation session in Des Moines, Iowa with Magistrate Judge Ross Walters on May 16, 2018, the Parties were able to reach a collective, non-reversionary settlement of this matter for ███████. See Decl. of Harold Lichten ("Lichten Decl.") (attached as Ex. A) ¶¶ 5-6, 11. The terms of the Parties' settlement are set forth in the Parties' Settlement Agreement (attached as Ex. B).

Plaintiffs' Counsel believes that the negotiated Settlement Agreement provides a very fair settlement for the 190 individuals who opted-in to this case, including Plaintiffs ("FLSA Settlement Members") with respect to their claims for allegedly unpaid overtime wages, especially when taking into consideration the possibility that the litigation, if not settled now, might not result in any recovery for the FLSA Settlement Members. Indeed, the settlement provides reasonable compensation for each FLSA Settlement Member. Over 25 FLSA Settlement Members will be receiving over ███████ and over 100 FLSA Settlement Members will be receiving shares over ███████. See Settlement Distribution List (attached as Ex. C). The average settlement share is expected to be approximately ███████.[1] Id. Moreover, since this is a non-reversionary settlement, no portion of the settlement funds will revert to the Defendants.

Plaintiffs respectfully submit that this Motion should be granted because the proposed Settlement Agreement satisfies all of the criteria for approval under federal law and falls well within the range of reasonableness.

Accordingly, Plaintiffs request that the Court issue an order: 1) granting approval of the proposed Settlement Agreement; 2) approving attorneys' fees and costs in the amount of one-third (1/3) of the Total Settlement Amount; 3) approving the distribution of service awards to the named

---

[1] Pursuant to the parties' agreement, the proceeds from uncashed checks will go to the *cy pres* beneficiary, Public Justice, which, among other things, represents low-wage workers throughout the country. Settlement Agreement ¶ 12.

2

Plaintiffs as described below; and 4) approving the plan of notice to the opt-ins, including approving the proposed Notice (attached as Exhibit B to the Parties' Settlement Agreement). Defendants do not oppose this Motion.

## II.    PROCEDURAL HISTORY

On May 19, 2017, Plaintiffs Scott Oxford, Christopher Coleman, Jonathan Guy, and Tiffany Gotsis filed this class and collective action, which alleges that Defendants misclassified their technicians as independent contractors and, as a result, failed to pay their technicians any overtime compensation and made unlawful deductions from their pay.[2] ECF No. 1.

On July 14, 2017, Mediacom filed a partial motion to dismiss Plaintiffs' claims for minimum wage during the technicians' training period and for unjust enrichment and Plaintiffs opposed. ECF Nos. 27, 32.

On August 4, 2017, Plaintiffs filed a motion for conditional certification and permission to distribute notice to putative class members under the FLSA, § 216(b). ECF No. 31. Both Defendants opposed conditional certification and Plaintiffs filed replies to both oppositions. ECF Nos. 37-38, 41-42.

On December 19, 2017, the Court granted Plaintiffs' motion for conditional certification and authorized the issuance of notice to "[a]ll Technicians who were classified as independent contractors while performing installation and repair work for Broadband Installations of Iowa, [LLC] on behalf of Mediacom in the United States from May 19, 2014 to the present." ECF No. 47. After the Parties conferred, Plaintiffs submitted a proposed notice to the collective members, which the Court approved on January 12, 2018. ECF No. 54. On January 18, 2018, Plaintiffs sent the court-approved notice and opt-in forms to all 447 collective action members via First Class

---

[2]    In addition, Plaintiffs allege that they were not paid minimum wage during their training periods, and that claim is still pending against Broadband. See ECF No. 47 at p. 9.

mail and e-mail.

On January 22, 2018, Plaintiffs filed a motion seeking telephone numbers for the collective action members due to the fact that Broadband had email addresses for only a few of the collective action members. ECF No. 56. On January 26, 2018, the Court granted Plaintiffs' motion and authorized Plaintiffs' Counsel to call any collective action member whose notice was returned in the mail as undeliverable or who did not otherwise respond to the notice within 30 days, using a script agreed upon by the Parties. ECF No. 63. On February 19, 2018, Broadband produced phone numbers for the collective action members. Over the course of the next two weeks, Plaintiffs' Counsel called 261 of the collective action members using the script approved by the Parties. See Decl. of Shae Cleary ("Cleary Decl.") (attached hereto as Ex. D) ¶ 6. As a result of Plaintiffs' efforts, 190 individuals joined this case. Id. ¶ 7.

On May 16, 2018, the Parties participated in a full-day, in-person mediation session in Des Moines, Iowa before Magistrate Judge Ross Walters. Prior to mediation, Defendants produced pay data showing the amounts paid and deductions from the weekly pay of each opt-in as well as logs for the start and end of each job performed by the opt-ins during the relevant time period. Plaintiffs then provided Defendants with a comprehensive damages analysis. Although the Parties were unable to reach a settlement at the mediation, the Parties continued negotiations thereafter with the help of Judge Walters and, as a result, were able to reach a resolution during a phone conference with Judge Walters on May 18, 2018.

The Parties now present the Settlement Agreement to the Court for its approval. The Parties have spent considerable time negotiating and drafting the Settlement Agreement, which ensures that all members of the Collective are provided with notice of the Settlement Agreement and its terms. Furthermore, Plaintiffs' Counsel will spend significant resources tracking down FLSA

US.118424149.01

Settlement Members and sending out checks at no additional cost to the FLSA Settlement Members.

## III.    THE TERMS OF THE SETTLEMENT AGREEMENT

The Settlement Agreement provides that the FLSA Settlement Members include: "[a]ll individuals who performed installation and repair work for Broadband Installations of Iowa, LLC on behalf of Mediacom in the United States from May 19, 2014 to the December 19, 2017, and who have opted in to the lawsuit captioned Oxford v. Broadband Installations of Iowa, LLC, No. 3:17-cv-00178 (S.D. Ia.) as of June 4, 2018" (the "FLSA Settlement Members"). The Parties have agreed that, for settlement purposes only, the Collective may be certified pursuant to the FLSA. There are approximately 190 FLSA Settlement Members. Each FLSA Settlement Member will be fully advised of this Settlement with the Notice of Settlement, which is attached to the Settlement Agreement as Exhibit B.

### A.    Monetary Terms

The Total Settlement Amount ███████ and will be distributed to the 190 FLSA Settlement Members on a non-reversionary basis. The settlement will provide reasonable compensation to the FLSA Settlement Members for the wrongs alleged in the Complaint, particularly given the litigation risks if the case were to move forward.

The Settlement Agreement provides that, if approved by the Court, the Total Settlement Amount of ███████ will be distributed as follows:

1.    Incentive payments of ███████ to Plaintiff Scott Oxford and ███████ each to Plaintiffs Christopher Coleman, Jonathan Guy, and Tiffany Gotsis, who initiated this action to benefit the entire collective of technicians who worked for Defendants, and who actively participated in this action, for a total of ███████.

2.    An award of attorneys' fees of one-third of the gross settlement amount (███████),

to Plaintiffs' Counsel, which will cover both their fees and expenses in litigating this lawsuit, as well as the costs associated with administering the settlement in-house.

3. The remaining amount, the Net Settlement Amount, will total ██████ to be distributed among all 190 FLSA Settlement Members, based on a formula that takes into account the number of weeks they worked for Defendants and amount of certain deductions taken from their pay. The formula is described below.

**B. Notice of The Settlement to FLSA Settlement Members, Calculation and Distribution of the Gross Settlement Amount**

Pursuant to the Settlement Agreement, Defendants will deposit a check for the Total Settlement Amount of ██████ with Plaintiffs' Counsel within thirty (30) days from the dismissal of this lawsuit and the conclusion of any appeal, whichever is later. No later than 14 days after Defendants have deposited the Total Settlement Amount, Plaintiffs' Counsel will mail the Court-Approved Notice of Settlement and Settlement Awards to FLSA Settlement Members via First Class Mail. See Proposed Notice (attached as Exhibit B to the Settlement Agreement). The Notice will inform FLSA Settlement Members of the settlement, how shares were calculated, the amount of their checks, and that, by depositing the check, FLSA Settlement Members will release all of their claims against Defendants related to the state and federal law claims which were raised or which could have been raised in the Complaint.

FLSA Settlement Members need not submit a Claim Form as they already opted in to the lawsuit prior to June 4, 2018. Awards to FLSA Settlement Members will be made from the Net Settlement Amount.

Each FLSA Settlement Member shall receive a settlement award calculated using the following formula, as set forth in the Settlement Agreement.

a. The amount of ████ per settlement claimant will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and

6

allocated to each opt-in so that each he or she receives at least ███ in exchange for their release of their claims.

b.      Plaintiffs' Counsel will calculate an award for each FLSA Settlement Member from the Net Settlement Amount based on the total potential damages (deductions plus overtime) for the respective FLSA Settlement Member when he/she worked for Defendants during the collective period.

c.      Each FLSA Settlement Member's total potential damages will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share percentage figure. The respective FLSA Settlement Member's total potential damages will be multiplied by the share percentage figure and added to the ███ allocation noted above to determine each FLSA Settlement Member's settlement award.

Each FLSA Settlement Member's settlement share will be treated as non-wage income and/or damages or liquidated damages, which will be reported on an IRS Form 1099, and will not be subject to withholding taxes. Settlement Agreement ¶ 6.

The Settlement is non-reversionary. Settlement Agreement ¶ 12. Settlement Award checks shall be valid for one-hundred eighty (180) days from the date they are issued. Id. The Settlement Award Checks will be accompanied by the Notice stating the checks are valid for 180 days. Settlement Agreement Ex. A. Plaintiffs' Counsel will attempt to contact FLSA Settlement Members whose checks are returned as undeliverable or who have not cashed their checks to obtain updated addresses. Lichten Decl. ¶ 16.

At the conclusion of the 180-day check void period, Plaintiffs' Counsel will pay the amount of uncashed checks to the *cy pres* beneficiary, Public Justice, which is an organization that represents low-wage workers with wage claims nationwide. Settlement Agreement ¶ 12.

**C.      Release of Claims**

FLSA Settlement Members who cash or deposit their settlement checks shall release:

Defendants and their past, present, and future owners, parent companies, subsidiaries, employees, affiliates, divisions, predecessors, and successors (collectively with Defendants, the "Released Parties") for any and all claims at any time through the date the Settlement Agreement is executed related to the alleged misclassification of them as independent contractors as opposed to employees,

7

including, without limitation, all state, local or federal claims, obligations, demands, actions, rights, causes of action, liabilities, and damages, or any other causes of action of whatever nature, whether known or unknown for alleged unpaid overtime wages, deductions, underpayment of wages, nonpayment of wages or compensation of any type, or any and all other types of compensation, liquidated or other damages (including actual, compensatory, incidental, indirect, consequential, exemplary, punitive,) unpaid costs, penalties, interest, attorneys' fees, costs, expenses, expert costs, rescission, equitable relief, reinstatement, declaratory and/or injunctive relief, restitution or other compensation and relief arising under the FLSA or any other state, local or federal law pertaining to payment of wages.

Settlement Agreement ¶ 10.[3]

### D.    Attorneys' Fees and Costs

Pursuant to the Settlement Agreement, Plaintiffs' Counsel's attorneys' fees shall not exceed one-third (1/3) of the Gross Settlement Amount (█████), which will compensate Plaintiffs' Counsel for all work performed in this lawsuit and for all of the work remaining to be performed, including, but not limited to, documenting the Settlement, securing Court approval of the Settlement, ensuring that the Settlement is fairly administered and implemented, and obtaining final dismissal of the lawsuit. Settlement Agreement ¶ 13. Plaintiffs' Counsel shall receive reimbursement of their out-of-pocket costs included in their attorneys' fees, which are included in the one-third fee. Id.

## IV.    ARGUMENT

Plaintiffs respectfully request that the Court enter the accompanying proposed order approving the Settlement. Defendants do not oppose this Motion.

### A.    Applicable Legal Standard

---

[3] In addition to releasing their above-mentioned claims against the Defendants, the notice will inform the FLSA Settlement Members that, by depositing their check, they agree to keep the amount of their settlement award confidential, and may not disclose to amount of their settlement award except to their spouse, attorney, tax preparer, or as otherwise required to disclose the amount by law. See Notice of Collective Action Settlement at p. 3.

### 1.    Legal Standard for Approval of FLSA Settlements

A Court may approve an FLSA settlement if "it represents a fair compromise of a bona fide wage and hour dispute." Harris v. Chipotle Mexican Grill, Inc., 2018 WL 617972, at *4 (D. Minn. Jan. 29, 2018) (citation omitted). "The district court must consider a number of factors in determining whether a settlement is fair, reasonable, and adequate: the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." Jones v. Casey's Gen. Stores, Inc., 266 F.R.D. 222, 229 (S.D. Iowa 2009) (quoting Van Horn v. Trickey, 840 F.2d 604, 607 (8th Cir.1988)).

"The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement," since "[p]arties may elect to opt in to an FLSA collective, but the failure to do so does not prevent them from bringing their own suits at a later date." Diaz v. Scores Holding Co., Inc., 2011 WL 6399468, at *2 (S.D.N.Y. July 11, 2011). In most cases, courts do not hold hearings on such settlements, but simply review the paperwork, and, if in order, approve the settlement. See, e.g., Aros v. United Rentals, Inc., 2012 WL 3060470, at *2 (D. Conn. July 26, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement," and "[t]he FLSA settlement in this case meets the standard for approval" because "[t]he settlement was a result of vigorously contested litigation with substantial formal and informal discovery, motion practice, and arm's-length negotiation conducted over much of that time."); Diaz, 2011 WL 6399468 at *2 (S.D.N.Y. July 11, 2011) (approving settlement of opt-in plaintiffs' FLSA claims because "[t]he settlement was the result of contested litigation and arm's length negotiation."); Ruiz v. GVMS, Inc., 2009 WL 3157349, at *1 (S.D. Tx. Sept. 25, 2009) ("This court has reviewed the settlement agreement and finds that the amount to

be paid to the plaintiffs and the amount of attorney's fees provided for in the settlement agreement are fair and reasonable."); Burton v. Utility Design, Inc., 2008 WL 2856983, at *2 (M.D. Fl. July 22, 2008) (adopting and confirming magistrate judge's findings and recommendation to approve the proposed settlement of individual FLSA claims for opt-in plaintiffs only); Beasley v. Custom Commc's, Inc., No. 15-00583 (Oct. 24, 2017 E.D.N.C.) (ECF No. 116) (approving settlement on behalf of cable installers who had opted-in to FLSA overtime and state law deductions case without a hearing).[4]

**B.    The Terms of the Proposed Settlement Are a Fair and Reasonable Resolution of a Bona Fide Dispute**

"A district court may only approve an FLSA settlement agreement after it determines that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties." King v. Raineri Const., LLC, 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015) (citing Fry v. Accent Mktg. Servs., L.L.C., No. 2014 WL 294421, at *1 (E.D. Mo. Jan. 27, 2014); Lynn's Food Stores, Inc. v. U.S., 679 F.2d 1350, 1353 (11th Cir.1982)); Stainbrook v. Minnesota Dept. of Pub. Safety, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017) (same); Valencia v. Greater Omaha Packing, 8:08CV161, 2014 WL 284461, at *2 (D. Neb. Jan. 23, 2014) ("Courts should review FLSA collective action settlements to ensure 'a fair and reasonable resolution of a bona fide dispute.'").

**1.    A *Bona Fide* Dispute Existed Between the Parties**

In evaluating a motion for settlement approval under the FLSA, courts look to whether

---

[4] Because the Parties agree to stipulate to a dismissal of Plaintiffs' Rule 23 claims without prejudice in connection with this Settlement, Rule 23 does not apply, and the Court may grant approval to the settlement via a one-step process, rather than holding a final fairness hearing. FLSA opt-in class members agreed to be bound by any judgment or settlement reached in this matter on their opt-in forms, thus there are no absentee class members who will be affected by this settlement.

US.118424149.01

there exists a bona fide dispute. "A settlement is bona fide if it reflects a reasonable compromise over issues actually in dispute, since employees may not waive their entitlement to minimum wage and overtime pay under FLSA." King, 2015 WL 631253, at *2 (citing D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 115 (1946); Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945)). Thus, for example, a settlement "is the product of contested litigation where the parties dispute the amount of overtime hours Plaintiff actually worked and whether defendants refused to pay for mandatory work hours." Boland v. Baue Funeral Home Co., 2015 WL 7300507, at *2 (E.D. Mo. Nov. 18, 2015).

There are several bona fide areas of dispute in this case. Plaintiffs allege that Defendants misclassified technicians as independent contractors under the FLSA. Courts have reached conflicting results, however, when making the determination of whether cable installers are employees or independent contractors under the FLSA. See Lang v. DirecTV, Inc., 801 F. Supp. 2d 532, 536 (E.D. La. 2011) (collecting cases); Roeder v. Directv, Inc., 2017 WL 151401, at *10 (N.D. Iowa Jan. 13, 2017) (collecting cases). Moreover, because the determination of whether a technician is an employee requires a "fact-intensive" inquiry, prior caselaw may not be dispositive on the employee-independent contractor question. Roeder, 2017 WL 151401, at *10.

Furthermore, if litigation were to continue, Defendants would likely move to decertify the collective. This Court has already conditionally certified a collective of technicians who worked for Broadband. ECF No. 47. The courts in the Eighth Circuit, however, utilize a two-step approach to collective action certification under the FLSA. See Tegtmeier v. PJ Iowa, L.C., 208 F. Supp. 3d 1012, 1018 (S.D. Iowa 2016); Putman v. Galaxy 1 Mktg., Inc., 276 F.R.D. 264, 269 (S.D. Iowa 2011). Courts have reached different conclusions when faced with motions to decertify collectives of technicians who allege that they were misclassified as independent contractors and were denied

11

overtime pay. Compare <u>Espenscheid v. DirectSat USA, LLC</u>, 705 F.3d 770, 773 (7th Cir. 2013) (decertifying class of installers finding that damages calculations would have required individual trials) with <u>Monroe v. FTS USA, LLC</u>, 860 F.3d 389, 406 (6th Cir. 2017) (denying motion to decertify and refusing to follow <u>Espenscheid</u>).

In addition, because Broadband classified its technicians as independent contractors, it did not maintain complete records of the technicians' work hours. Thus, there would likely be a dispute over the amount of the technicians' overtime damages.

Defendants also asserted that, even if Plaintiffs prevailed on liability, Plaintiffs would not be able to demonstrate that the violation was a "knowing violation," such that Plaintiffs would only be able to recover under a two-year FLSA statute of limitations. <u>See</u> 29 U.S.C. § 255(a); <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988). Ultimately, the Settlement that the Parties reached reflects what Plaintiffs' Counsel believes to be a fair and reasonable compromise of disputed claims that takes into account the risks that Plaintiffs would face if the case proceeded in litigation.

### 2.      The Proposed Settlement is Fair and Reasonable

The Eighth Circuit has not definitively set out FLSA-specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement. However, district courts have looked to the following factors when evaluating a settlement under the FLSA: the stage of the litigation and amount of discovery exchanged, the experience of counsel, the probability of plaintiffs' success on the merits, any "overreaching" by the employer in the settlement negotiations, and whether the settlement was the product of arm's length negotiations between represented parties based on the merits of the case. <u>King</u>, 2015 WL 631253, at *2.

The Net Settlement Amount provides FLSA Settlement Members with the recovery of unpaid overtime hours worked and deductions taken form their pay, and it was carefully negotiated

based on factual discovery, a substantial investigation by Plaintiffs' Counsel, and the review and analysis of documents produced by Defendants in preparation for mediation. The Net Settlement Amount is based on an analysis of workweeks that the FLSA Settlement Members worked for Defendants during the relevant time period and deductions data taken from Defendants' personnel and payroll records.

If the Settlement is approved, all FLSA Settlement Members will receive a Settlement Award from the Net Settlement Amount, and FLSA Settlement Members will only release claims against Defendants if they cash their check. At the conclusion of the 180-day check void period, Plaintiffs' Counsel shall issue a check for the remaining amount in uncashed checks payable to Public Justice, the Parties' agreed upon *cy pres* recipient. Defendant will not receive a release from those FLSA Settlement Members who do not deposit and/or cash their settlement checks by the 180-day check cashing deadline.

### 3.    The Allocation Formula is Fair and Reasonable

The proposed allocation formula is fair and reasonable and should be approved. See In re Dell, 2010 WL 2371834, at *10 (W.D. Tex. June 11, 2010) ("The allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel.") (quoting In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 429–30 (S.D.N.Y. 2001) (citations omitted)); see also Chaverria v. New York Airport Serv., LLC, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) ("As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.") (citations omitted). Under the proposed allocation formula, FLSA Settlement Members will receive settlement shares based on a formula that takes into account the number of weeks they worked for Defendants and amount of certain deductions taken from their pay. "A plan of allocation that reimburses class members based

on the extent of their injuries is generally reasonable." In re Oracle Sec. Litig., 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994); Slipchenko v. Brunel Energy, Inc., 2015 WL 338358, at *12 (S.D. Tex. Jan. 23, 2015); Schwartz v. TXU Corp., 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005). This formula is similar to those found to be fair and reasonable in similar cases, and warrants approval. See, e.g., DeWitt v Darlington Cty., S.C., 2013 WL 6408371, at *6 (D.S.C. Dec. 6, 2013) (approving a *pro rata* allocation of the settlement based on the number of shifts worked); Kidrick v. ABC Television & Appliance Rental, Inc., 1999 WL 1027050, at * 3 (N.D.W.V. May 12, 1999) (approving distribution of the settlement fund based on the number of workweeks each class member worked).

When, in comparison to the proposed Settlement, proceeding with litigation would require a substantial amount of time to yield a benefit to the FLSA Settlement Members, it is an indication that the proposed settlement is fair, reasonable, and adequate. See Edelen v. Am. Residential Servs. Inc., 2013 WL 3816986, at *9 (D. Md. July 22, 2013) ("[t]he existence of [ ] disputed legal and factual issues creates uncertainty and risk for all parties moving forward"); see also Pliego v. Los Arcos Mexican Rests., Inc., 313 F.R.D. 117, 130-131 (D. Colo. 2016) ("[G]iven the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation."). In the instant case, the complexity and expense of proceeding with litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.

The Settlement was the result of contested litigation, factual discovery, and arm's-length negotiations. The proposed Settlement was only reached after the Parties exchanged substantial informal discovery and conducted a full-day, in-person mediation session in Des Moines, Iowa

with Magistrate Judge Ross Walters, preceded by extensive arm's-length negotiations between counsel for the Parties. As described above, Plaintiffs' Counsel extensively investigated the applicable law, the relevant facts discovered in this action, and the potential defenses thereto. The Total Settlement Amount is based on an intensive review of the facts and law.

Plaintiffs' Counsel are experienced and respected class action litigators. See Lichten Decl. ¶¶ 2-4; Decl. of Shanon J. Carson ("Carson Decl.") at ¶¶ 2-4 (attached as Ex. E). Based on Plaintiffs' Counsel's knowledge and expertise in this area of law, Plaintiffs' Counsel believe this Settlement will provide a substantial benefit to the FLSA Settlement Members. In summary, the proposed Settlement Agreement is the product of careful factual and legal research and arm's-length negotiations between the Parties.

### C.      The Service Awards are Justified and Should Be Approved

Pursuant to the Settlement Agreement, Defendants have agreed to pay service awards of ███████ to Plaintiff Scott Oxford, and awards of █████ each to Plaintiffs Christopher Coleman, Jonathan Guy, and Tiffany Gotsis. Subject to Court approval, these amounts will be paid to Plaintiffs in addition to their recovery of unpaid overtime and deductions for the time when they worked for Broadband. "Courts routinely recognize and approve incentive awards for class representatives and deponents." Wineland v. Casey's Gen. Stores, Inc., 267 F.R.D. 669, 677 (S.D. Iowa 2009) (collecting cases). In fact, courts in this Circuit have routinely approved incentive awards in wage and hour cases in line with the awards requested by Plaintiffs in this case. See, e.g., Harris v. Chipotle Mexican Grill, Inc., 2018 WL 617972, at *3 (D. Minn. Jan. 29, 2018) (approving incentive payments of $15,000 two of the named plaintiffs, $7,500 for another plaintiff, and $5,000 for a fourth plaintiff); McClean v. Health Sys., Inc., 6:11-CV-03037-DGK, 2015 WL 12513703, at *4 (W.D. Mo. Aug. 4, 2015) (approving $5,000 incentive award to each of two named plaintiffs and a $500 service award to each of eight deponents); Wineland, 267 F.R.D. at

678 (approving incentive payment of $10,000 to the named Plaintiff).

Here, the proposed additional payments to Plaintiffs are justified by the benefits that Plaintiffs have brought to the FLSA Settlement Members. Plaintiffs took significant risks in coming forward to represent the interests of their fellow employees, including risking their reputation in the community and in their field of employment, in order to participate in this case on behalf of the collective action members. See Sand v. Greenberg, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); Craig v. Rite Aid Corp., 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013), appeal dismissed (3d Cir. Feb. 20, 2013) ("[N]amed plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation.").

Furthermore, Plaintiffs worked with Plaintiffs' Counsel, providing background information about their employment, about Defendants' policies and practices, and about the allegations in this lawsuit. Lichten Decl. ¶¶ 20-21. Further, Plaintiffs actively supported the litigation of their claims on behalf of the collective and worked with Plaintiffs' Counsel to produce declarations in support of conditional certification. See ECF Nos. 31.4, 31.8. Moreover, Plaintiffs worked with counsel to prepare for the mediation, and some of the Plaintiffs traveled to Des Moines and attended the full-day mediation. Lichten Decl. ¶ 21. For these reasons, the service award payments of ▮▮▮▮▮▮▮ to Plaintiff Scott Oxford, and awards of ▮▮▮▮ each to Plaintiffs Christopher Coleman, Jonathan Guy, and Tiffany Gotsis should be approved as fair and reasonable.

### D.    The Proposed Settlement Furthers the Purpose of the FLSA

Finally, the Settlement Agreement contains no provisions that would be contrary to the

purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. Indeed, the settlement furthers the purposes of the FLSA by providing FLSA Settlement Members with substantial recovery for their unpaid overtime, that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. See 29 U.S.C. § 202 (congressional finding and declaration of policy); Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Importantly, all FLSA Settlement Members will receive a Settlement Award. Because the settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

Moreover, FLSA Settlement Members will receive the proposed Notice, which is attached to the Settlement Agreement as Exhibit B, which is clear and straightforward, and provides information on the meaning and nature of the terms and provisions of the Settlement Agreement, the monetary awards that the Settlement will provide to FLSA Settlement Members, including the allocation method, the scope of the release, the request for attorneys' fees and costs, the deadline for cashing the settlement checks, and their rights should they not cash the settlement checks.

Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a notice disseminated under authority of the Court, and should be approved.

     **E.**     <u>**The Request for Attorneys' Fees and Costs Should be Approved**</u>

          **1.**     **The Fee Shifting Provision of the FLSA Provides For The Award of Attorneys' Fees**

A plaintiff in a FLSA case may recover his/her attorneys' fees and expenses under the statute's fee-shifting provision. See 29 U.S.C. § 216(b) ("The court in such action shall, in addition

to any judgment awarded to the plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); Lochridge v. Lindsey Mgt. Co., Inc., 824 F.3d 780, 782 (8th Cir. 2016).

In common fund cases, district courts in the Eighth Circuit have examined a motion for attorneys' fees under one of two methods – lodestar or percentage method. See Johnston v. Comerica Mortg. Corp., 83 F.3d 241, 244 (8th Cir. 1996). It is within the discretion of the district court to choose which method to apply. Id. "A routine calculation of fees involves the common-fund doctrine, which is based on a percentage of the common fund recovered." In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig., 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (citing Blum v. Stenson, 465 U.S. 886, 900 n. 16, (1984); In re U.S. Bancorp Litig., 291 F.3d 1035, 1038 (8th Cir.2002)). "After the court determines the reasonable percentage, it will cross-check the reasonableness of the attorney fees by comparing the percentage award to the lodestar." In re Xcel Energy, Inc., 364 F. Supp. 2d at 993.

"In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" In re Xcel Energy, Inc., 364 F. Supp. 2d at 991 (quoting Petrovic, 200 F.3d at 1157). Although "[t]he Eighth Circuit has not established factors that a district court should consider when calculating the reasonable percentage to award attorney fees in a common fund case" (In re Xcel Energy, Inc., 364 F. Supp. 2d at 993), the factors commonly considered as part of this inquiry include the following:

> (1) the time and work required; (2) the preclusion of other employment by the attorney due to acceptance of this case; (3) the contingent nature of the fee; (4) the results obtained; and (5) the experience, reputation, and ability of the attorneys.

Huyer v. Wells Fargo & Co., 314 F.R.D. 621, 628-29 (S.D. Iowa 2016), aff'd sub nom. Huyer v. Njema, 847 F.3d 934 (8th Cir. 2017), and appeal dismissed sub nom. Huyer v. Van de Voorde, 847 F.3d 983 (8th Cir. 2017), and aff'd sub nom. Huyer v. Buckley, 849 F.3d 395 (8th Cir. 2017)

(citing <u>Johnson v. Ga. Highway Express</u>, 488 F.2d 714, 719–20 (5th Cir. 1974)). These factors support approval of the requested fee and are discussed below.

### 2.    Time and Work Required

The amount of time and labor devoted to this case by Plaintiffs' Counsel was substantial. Prosecuting this matter to a successful settlement for the benefit of the FLSA Settlement Members required Class Counsel to expend a significant amount of time by attorneys, including substantial legal and factual research, an in-person negotiation, and numerous subsequent settlement negotiations. Additionally, Plaintiffs' Counsel will play a significant role in the settlement administration process. The time and labor expended support the requested fee.

### 3.    Difficulty and Novelty of Question Presented by The Case, as Well as the Skill Required to Perform the Legal Service Properly

Certifying any collective to afford nationwide relief is a significant undertaking in terms of sophistication and risk. In this case, Plaintiffs and Defendants agree that there are numerous disputed issues of fact and law, including, specifically, whether Plaintiffs and the FLSA Settlement Members were misclassified as independent contractors and entitled to overtime compensation. Defendants would contest the number of overtime hours worked. Defendants have also asserted that maintaining certification would be difficult. Because Defendants had potentially strong legal and factual defenses to Plaintiffs' claims, even if Plaintiffs were able to maintain collective action certification in the action, an outcome of zero recovery for the Plaintiffs and for the FLSA Settlement Members remained possible. Plaintiffs' Counsel accepted these risks, diligently prosecuted the case, and negotiated a meaningful and substantial recovery. Accordingly, this factor also supports Plaintiffs' Counsel's fee request.

Both trial and judicial review are unpredictable and could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself. Indeed, as the U.S. District Court for

US.118424149.01

the Southern District of New York observed:

> Even a victory at trial is not a guarantee of ultimate success. If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such a judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.

In re Warner Commc'ns Sec. Litig., 618 F. Supp. 735, 747-48, aff'd, 798 F.2d 35 (2d Cir. 1986).

The wage and hour issues in this litigation are governed by the highly technical federal FLSA law and regulations. Plaintiffs' Counsel focus their practices in this highly technical area and have litigated numerous cases under these wage and hour laws on both an individual and class/collective action basis. See Lichten Decl. ¶¶ 2-4; Carson Decl. ¶¶ 2-4. Plaintiffs' Counsel thus had the requisite skill to perform the legal services required in this complex litigation.

### 4.    Contingent Nature of the Case and Customary Contingency Fees

Plaintiffs' Counsel agreed to represent Named Plaintiffs on a contingency fee basis. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." Wells v. Sullivan, 907 F.2d 367, 371 (2d Cir. 1990). Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case." In re Abrams, 605 F.3d 238, 245-46 (4th Cir. 2010). "Access to the courts would be difficult to achieve without compensating attorneys for that risk." Id.

In this case, Plaintiffs' Counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial. This factor thus weighs in favor of the requested fees because Plaintiffs' Counsel assumed significant risk of nonpayment when they agreed to represent Named Plaintiffs on a contingency fee basis. See DeHoyos v. Allstate Corp., 240 F.R.D.269, 330 (W. D. Tex. 2007) (quoting In re Prudential-Bache Energy

20

Income P'ships Sec. Litig., 1994 WL 202394, at *6 (E.D. La. May 18, 1994) ("Counsel's

contingent fee risk is an important factor in determining the fee award. Success is never guaranteed

and counsel faced serious risks since both trial and judicial review are unpredictable.")  By

permitting clients to obtain attorneys without having to pay hourly fees, this system provides

critical access to the courts for people who otherwise would not be able to find competent counsel

to represent them. The risks Plaintiffs' Counsel undertook were real, and the resources that

Plaintiffs' Counsel dedicated to this action meant that such resources were not available to other

cases. Plaintiffs' Counsel's contingency risk, together with the excellent result that has been

achieved on behalf of the FLSA Settlement Members, supports the requested fees and costs.

    A one-third attorneys' fee is reasonable in actions of this nature. In fact, courts in this

Circuit and across the country have awarded a one-third fee in other class and collective actions.

See In re U.S. Bancorp Litig., 291 F.3d 1035, 1038 (8th Cir. 2002) (concluding that a district

court's attorney fee award of 36% of a class action settlement fund was not an abuse of discretion);

Yarrington v. Solvay Pharm., Inc., 697 F. Supp. 2d 1057, 1061 (D.Minn.2010) (finding that an

award of 36% of a class action settlement fund was "in line with the range of fees approved by the

Eighth Circuit"); Huyer v. Wells Fargo & Co., 314 F.R.D. at 629 (approving attorneys' fees of 33

1/3% of total settlement fund); Wineland, 267 F.R.D. at 677 (approving attorneys' fees of 33 1/3%

of total settlement fund of $6.7 million, plus $150,000 in costs, in FLSA collective action on behalf

of class approximately 11,400 convenience store employees); Vela v. City of Houston, 276 F.3d

659, 681 (5th Cir. 2001) (noting fee awards generally ranging from 35% to 40% are common in

cases taken on a contingent fee basis);[5]  Fees within this range are "presumptively reasonable."

---

[5] See also Bryant v. United Furniture Indust., Inc., 2017 WL 639320, at *4 (N.D. Miss. Feb. 16, 2017) ("awards commonly fall between a lower end of 20% and an upper end of 50%"); Chieftain Royalty Co. v. Laredo Petroleum, Inc., 2015 WL 2254606, at *3 (W.D. Okla. May 13, 2015) ("An

Vaszlavik v. Storage Tech. Corp., 2000 WL 1268824, *4 (D. Colo. March 9, 2000).

Here, Plaintiffs' Counsel seek one-third of the Gross Settlement Amount as fees. As described above, this is well within the percentage range approved in similar cases. Further, the requested one-third of the Gross Settlement Fund includes the costs incurred by Plaintiffs' Counsel. See Whittington v. Taco Bell of Am., Inc., 2013 WL 6022972, *6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."). Thus, the customary fee factor supports the requested fee award.

### 5.    Experience of the Attorneys and Time and Resources Involved

As is described in detail in Plaintiffs' Counsel's declarations, Plaintiffs' Counsel focus their practices on and have extensive experience in representing workers in wage and hour litigation nationwide, including class and collective action cases. Counsel have shown their ability by achieving the excellent result obtained for the FLSA Settlement Members in this case. The

---

award of forty percent (40%) of the settlement value is well within the range of acceptable fee awards in common fund cases."); Decohen v. Abbasi, LLC, 299 F.R.D. 469, 482-483 (D. Md. 2014) (Awarding one-third of $3,050,000 settlement fund, which amounted to a 3.9 multiplier); DeWitt v. Darlington Cty., S.C., 2013 WL 6408371, at *9 (D.S.C. Dec. 6, 2013) (finding one-third fee is customary in class litigation); Bredbenner v. Liberty Travel, Inc., 2011 WL 1344745, at *21 (D.N.J. Apr. 8, 2011) (Analyzing cases from district courts throughout the country in common fund cases where attorneys' fee awards "generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund," and noting that most of the cases awarded attorneys' fees at the level of 33.3% of the common fund.); Clark v. Ecolab, Inc., 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010) (Approving attorneys' fees of $2 million from the $6 million common fund in a FLSA collective action and noting that attorneys' fee percentages of one-third are "reasonable and consistent with the norms of class litigation in [the Second] circuit."); Smith v. Krispy Kreme Doughnut Corp., 2007 WL 119157, at * 2 (M.D.N.C. Jan. 10, 2007) (Noting, "in this jurisdiction, contingent fees of one-third (33.3%) are common."); Cimarron Pipeline Const., Inc. v. Nat'l Council on Comp. Ins., 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); Enter. Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 249–50 (S.D. Ohio 1991) ("The percentages awarded in common fund cases typically range from 20 to 50 percent of the common fund created.").

US.118424149.01

experience, reputation, and ability of Plaintiffs' Counsel, therefore, supports the requested fee award.

Large scale wage and hour cases are complicated and time-consuming matters. Any attorney undertaking these types of cases must be prepared to make tremendous investments of time, energy, and financial resources in order to appropriately pursue them, as evidenced by this case. In preparing for mediation, Plaintiffs' Counsel reviewed Defendants' payroll and personnel documents and, based on the data provided, generated a detailed damages analysis consisting of various models representing different assumptions. Plaintiffs' Counsel then worked with Defendants' Counsel to answer any questions either party may have on the data and damages analysis provided. More generally, Plaintiffs' Counsel possesses particularized skill, experience, and ability to litigate these types of claims.

Accordingly, the fees approved in similar cases further support the requested fee here.

### F.    Lodestar Crosscheck

As mentioned above, some district courts in the Eighth Circuit also employ a lodestar cross check to double check the reasonableness of a fee requested under the percentage-of-a-common-fund. See In re Xcel Energy, Inc., 364 F. Supp. 2d at 993. When the lodestar method has been utilized, "[c]ourts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." Kay Co. v. Equitable Prod. Co., 749 F. Supp. 2d 455, 470 (S.D.V.W. 2010);  In re Xcel Energy, Inc., 364 F. Supp. 2d at 999 (approving multiplier of 4.7); In re UnitedHealth Grp. Inc. S'holder Derivative Litig., 631 F. Supp. 2d 1151, 1160 (D. Minn. 2009) (applying 2.75 multiplier); Yarrington v. Solvay Pharm., Inc., 697 F. Supp. 2d 1057, 1065 (D. Minn. 2010) (finding 2.26 multiplier appropriate); In re Monosodium Glutamate Antitrust Litig., CIV. 00MDL1328PAM, 2003 WL 297276, at *3 (D. Minn. Feb. 6, 2003) (using multiplier of "slightly less than 2").

US.118424149.01

Class Counsel have logged approximately 515.7 hours litigating this case. Lichten Decl. ¶ 25; Carson Decl. ¶ 5; Aff. of Nathan Willems ("Willems Aff.") (attached as Ex. F) . Based on reasonable hourly rates, Plaintiffs estimate that they have generated approximately $241,703 in attorneys' fees. Id.

Under a lodestar cross check, a one-third fee request in this case amounts to a multiplier of approximately 1.04.  "Courts routinely award counsel two to three times lodestar in class action settlements." Johnson v. Brennan, 2011 WL 4357376, at *13 (S.D.N.Y. Sept. 16, 2011) (collecting cases); In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005) (finding multiplier of 2.02 is "appropriate"); In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 298–99, 303–04 (3rd Cir. 2005) (finding no abuse of discretion where district court approved attorney's fees with a "fairly common" lodestar multiplier of 4.07, despite objection that lodestar multiplier could not be above 3). The result obtained and the work that was required by Plaintiffs' Counsel to obtain this Settlement, as described throughout this brief, justify the miniscule multiplier of 1.04.[6]

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: 1) granting approval of the proposed Settlement Agreement; 2) approving attorneys' fees and costs in the amount of one-third (1/3) of the Total Settlement Amount; 3) approving the distribution of

---

[6] In addition, Class Counsel's requested one-third fee is reasonable given that counsel will recover their costs incurred in litigating this lawsuit from the requested fee.  Indeed, the FLSA provides for the reimbursement of costs.  See 29 U.S.C. § 216(b).  Accordingly, "[u]nder the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses."  In re Cardizem CD Antitrust Litig., 210 F.R.D. 508, 535 (E.D. Mich. 2003).   The expenses incurred in this litigation to date are described in the accompanying declarations total $7,232.  See Lichten Decl. ¶ 26; Carson Decl. ¶ 12; Willems Aff. All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement.

US.118424149.01

service awards to the named Plaintiffs as described below; 4) approving the plan of notice to the

opt-ins, including approving the proposed Notice; and (5) dismissing this claims of the Settlement

Class Members with prejudice against Defendants. See Proposed Order (attached as Ex. G).

Dated:  July 31, 2018                         Respectfully submitted,

                                              SCOTT OXFORD, CHRISTOPHER
                                              COLEMAN, JONATHAN GUY, and
                                              TIFFANY GOTSIS, individually and on
                                              behalf of all persons similarly situated,

                                              By their attorneys,


                                              /s/Harold Lichten
                                              Harold Lichten (*pro hac vice*)
                                              Benjamin J. Weber (*pro hac vice*)
                                              LICHTEN & LISS-RIORDAN, P.C.
                                              729 Boylston St., Suite 2000
                                              Boston, MA 02116
                                              Telephone: (617) 994-5800
                                              Facsimile: (617) 994-5801
                                              hlichten@llrlaw.com
                                              bweber@llrlaw.com

                                              Nate Willems
                                              RUSH & NICHOLSON, P.L.C.
                                              P.O. Box 637
                                              Cedar Rapids, IA 52406
                                              319-363-5209
                                              Fax: 319-363-6664
                                              nate@rushnicholson.com

                                              Shanon J. Carson (*pro hac vice*)
                                              Sarah R. Schalman-Bergen (*pro hac vice*)
                                              Camille Fundora (*pro hac vice*)
                                              BERGER & MONTAGUE, P.C.
                                              1622 Locust Street
                                              Philadelphia, PA 19103
                                              Telephone: (215) 875-3000
                                              Facsimile: (215) 875-4604
                                              scarson@bm.net

US.118424149.01

sschalman-bergen@bm.net
cfundora@bm.net

US.118424149.01

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been

filed on the ECF docket and is available for viewing and download on July 31, 2018.

<u>s/ Harold Lichten</u>
Harold Lichten

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that I conferred with counsel for Defendants Broadband

Installations of Iowa, LLC and Mediacom Communications Corp. regarding this motion and they

agreed to its contents.

<u>s/ Harold Lichten</u>
Harold Lichten

US.118424149.01